Charles A. Loreto, J.
The petitioner moves to vacate an award made by two of three arbitrators on several grounds (1) that they exceeded their powers (2) that one of the arbitrators was guilty of bias and partiality, and (3) that he obtained ex parte information without the knowledge of either the petitioner or the other arbitrators.
Respondent had a contract with a Japanese firm which agreed to build a ship for it. In April, 1953 it assigned to petitioner all its rights in that contract for which the latter agreed to pay the sum of $3,600,000 plus additional amounts. Prior to the assignment respondent had ordered certain condenser tubes from a certain manufacturer in order to replace the tubes which were listed in the specifications. Petitioner agreed to this change and obligated itself to make payment for this Item to respondent. After the vessel was completed and accepted by petitioner, it sailed from Japan and commenced trading. While at sea on later voyages the tubes leaked or burned out and had to be *224 replaced. It is the claim for damages for the replacement of tubes and other consequential damages that became the subject of arbitration pursuant to the arbitration provision in the assignment agreement.
Initially, respondent contends that this court lacks jurisdiction over the subject matter asserting the controversy between the parties arose out of a maritime contract containing an arbitration provision. It argues that the Federal Arbitration Act U. S. Code, tit. 9, § 1 et seq.) applies and that jurisdiction lies exclusively in the Federal court. Also it claims that there is now pending a motion to confirm the arbitration award in the United States District Court of New Jersey (since abandoned and now [subsequent to the instant application] brought on in the United States District Court for the Southern District of New York), where there is also pending a libel action in admiralty brought by it to foreclose a ship mortgage by reason of a default in payment of the final installment of $100,000 due thereunder and a cross-libel (by petitioner’s answer to the libel) in which it admitted it owed the $100,000, but pleaded as a defense and setoff that respondent was not entitled to recover the sum until the arbitration proceeding had been completed and petitioner be credited for an award, if any be made in its favor. It nevertheless opposes vacatur of the award should the court decide it has jurisdiction.
The arbitration clause is found in the contract of assignment. It provides that “ [a] 11 controversies arising under * * * or relating to this agreement shall be settled by arbitration in New York, New York, * * * and judgment upon
any award rendered may be entered in any court having jurisdiction.” Absent priority in jurisdiction of the Federal court or applicability of the Federal Arbitration Act, there is no doubt that this court has jurisdiction of this arbitration proceeding.
The Federal Arbitration Act applies to “ [A] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ”. (U. S. Code, tit. 9, § 2; see, also, Bernhardt v. Polygraphic Co., 350 U. S. 198). The court is of the opinion that the question presented to the arbitrators was neither a maritime transaction or commerce, within the meaning of the statute. The contract between the parties deals with the transfer of respondent’s rights in a shipbuilding agreement. As part of that transaction, petitioner agreed to purchase from respondent the substitute condenser tubes which the latter had previously ordered from a manufacturer in Germany for instal *225 lation on the vessel and were then en route to the shipyard in Japan.
Quite clearly, then, the dispute arose in connection with a shipbuilding contract, which fundamentally is a transaction outside the admiralty jurisdiction. (Bogart v. Steamboat John Jay, 17 How. [58 U. S.] 399; People’s Ferry Co. v. Beers, 20 How. [61 U. S.] 393). Not only is such a contract non-maritime, but any contract for the supply of the original equipment of the vessel is similarly outside the jurisdiction of admiralty. (The Winnebago, 205 U. S. 354; 1 Benedict, Admiralty [6th ed., 1940], pp. 143-146; Gilmore & Black, Law of Admiralty [1957], p. 25.) It is apparent that the transaction in question is not a “maritime transaction ” as contemplated by the Arbitration Act.
“ Commerce ” as defined under the Federal Arbitration Act ‘ ‘ means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, * * * or between the District of Columbia and any State or Territory or foreign nation ” (U. S. Code, tit. 9, § 1).
The fact that respondent is a Panamanian corporation and petitioner is a Liberian corporation and the tubes were manufactured in Germany and were en route to Japan, where the vessel was in the process of construction, obviously is not commerce among the several States or territories or the District of Columbia, or between any State, territory or said District and any foreign nation as defined in the Act (see The Volsinio, 32 F. 2d 357). It was commerce between foreign countries.
Also, the fact that the United States District Court of New Jersey had jurisdiction of the subject matter of the cross libel since the original libel (foreclosure of ship mortgage) was admiralty in nature, does not mean that it has jurisdiction to enforce or vacate the award in the subject arbitration. For only maritime transactions and those involving commerce are subject to the Federal Arbitration Act.
Even were respondent correct in its contention that the Federal Act applies, this court has concurrent jurisdiction to decide the application to vacate the award. In Matter of Cocotos Steamship of Panama, S. A. (Hugo Neu Corp.) (178 F. Supp. 491) the court states:
“ There is no doubt that a State Court has jurisdiction over arbitration agreements in maritime contracts under the ‘ saving to suitors’ clause of the Judicial Code. (28 U. S. C., § 1333 (1)), Red Cross Line v. Atlantic Fruit Co., 1924, 264 U. S. 109, 44 S. Ct. 274, 68 L. Ed. 582. There would appear to be no reason *226 whatsoever therefor for there to be any “priority” in this court merely because the action is a maritime one.” (p. 492).
* * *
“ The initial invocation of the aid of the judiciary which is to be seriously contested, took place when the owner moved in the Supreme Court of the State of New York for an order vacating the award. ‘ Priority ’, if that word can properly be used in this context, should be accorded to the court whose jurisdiction was so initially invoked.” (p. 493). (See, also, Matter of First Nat. Oil Corp. [Arrieta], 2 Misc 2d 225, 228, affd. 2 A D 2d 590; Madruga v. Superior Ct., 346 U. S. 556, 561).
The court holds that it has jurisdiction of the proceeding to vacate the award of the arbitrators.
Petitioner charges that one of the arbitrators, George Mejlaender, was a principal member of a firm which was employed as brokers in the charter of at least two vessels for one, Lief Hoegh, the principal behind the corporate respondent, during the very time that he was acting as an arbitrator; that one of these charters was made on October 30, 1956, and the other on March 12, 1957, for which commissions approximating the sum of $350,000 were earned by his firm. Petitioner further charges that he failed to disclose his firm’s business transactions with Mr. Hoegh to either the petitioner or his fellow arbitrators. No attempt at denial of the charges is made by respondent, except a hearsay and inadequate statement of its counsel that the firm of which the arbitrator was a member had “ represented hundreds of persons and firms with shipping interests, in connection with the purchase, sale and chartering of vessels by said persons and firms.”
In the court’s opinion, the arbitrator’s failure to disclose the fact that he was a member of the firm of brokers, however unintentional it may have seemed, disqualified him from acting as an arbitrator in a controversy between petitioner and respondent.
These transactions for which the arbitrator and his firm earned such large sums of money from the respondent, are not vague or remote business dealings that can be considered as incidental or usual in the shipping industry. Nor may they be “regarded as the casual and occasional dealings which might be expected where arbitrators are chosen because of familiarity with an industry” (Matter of Milliken Woolens [Weber Knit Sportswear], 11 A D 2d 166, 170, and cases cited).
The court is satisfied that neither petitioner nor its attorneys was aware of the business transactions conducted by the arbitrator’s firm during the arbitration proceeding and prior to the *227 rendition of the award. The facts here concealed from the petitioner concerned the actual bias of the arbitrator, of which he must be free both in fact and in appearance. In Matter of Friedman (215 App. Div. 130, 136, cited with approval recently in Matter of Milliken Woolens [Weber Knit Sportswear], 11 A D 2d 166, supra) the court said:16 During recent years arbitration has been more and more resorted to for the settlement of business controversies. It, therefore, becomes of the utmost importance that in statutory proceedings of this character where the rights of parties are adjudicated, not by trained lawyers and judges, but by fellow-businessmen, every safeguard possible should be thrown about the proceeding to insure the utmost fairness and impartiality of those charged with the determination of the rights of the parties. Nothing should be permitted to throw suspicion even upon the entire impartiality of arbitrators. The finality of an award of arbitrators as compared with the reviewable decision of a judge or a referee makes this all the more important, and that the tribunal Avhich is to pass upon the rights of the parties be not subject to the slightest suspicion as to its fairness.” (See, also, Matter of Milliken Sportswear [Weber Knit Sportswear], 11 A D 2d 166, supra; Matter of Knickerbocker Textile Corp. [Sheila-Lynn, Inc.], 172 Misc. 1015, affd. 259 App. Div. 992; Matter of Shirley Silk Co. [American Silk Mills], 260 App. Div. 572; Matter of Miller [Weiner], 260 App. Div. 444).
Finally, petitioner charges the same arbitrator with having obtained information ex parte from one of the members of a brokerage firm involved in the assignment of the vessel, without the knowledge or consent of petitioner or the other arbitrators and a making reference to the information thus obtained to his fellow arbitrators. In the court’s opinion, the independent inquiry made by the arbitrator while the matter was sub judice constituted misbehavior prejudicing the rights of the petitioner. It was improper for him to make an ex parte inquiry of his own without the consent of the parties to the controversy. (Matter of Horowitz v. Kaplan, 248 N. Y. 547, Berizzi Co. v. Krausz, 239 N. Y. 315; Matter of 290 Park Ave. [Fergus Motors], 275 App. Div. 565.)
The respondent’s contention, that the award was the sole determination of the umpire and became binding on the parties since his selection was made by the two differing arbitrators (who then became nothing more than advocates and agents of the respective parties) is without merit. There is no factual proof submitted by respondent that the parties agreed to permit the umpire solely to decide the issues on which the arbitrators *228 failed to agree and accept Ms determination as a binding award. The documentary proof, to the contrary, establishes that the “ umpire ” designated by the two arbitrators was,, in fact, a joint arbitrator and not a sole umpire with power to render a binding award.
The court deems it unnecessary to pass on any of the other grounds urged by the petitioner to vacate the award for it concludes that the parties should proceed to a new arbitration pursuant to the terms of their agreement and in the interest of justice before new arbitrators. The motion to vacate the award is granted.