In the Matter of the Arbitration between SUMITOMO CORPORATION, and Oshima Shipbuilding Co., Ltd., Petitioners,

v.

PARAKOPI COMPANIA MARITIMA, S.A., Respondent.

No. 79 Civ. 3961 (HFW).

United States District Court, S. D. New York.

Oct. 12, 1979.

("Oshima") commenced this action against respondent Parakopi Compania Maritima, S.A. ("Parakopi") for an order compelling Parakopi to proceed to arbitration and appointing a third arbitrator.

## BACKGROUND

The principal facts are not in dispute.

Sumitomo and Oshima are corporations organized and existing under the laws of Japan. Sumitomo has its principal place of business in Tokyo, Japan, and Oshima has its principal place of business in Nagasaki, Japan. Parakopi is incorporated in Panama, and has its principal place of business in Piraeus, Greece.

In September 1975, Sumitomo and Parakopi entered into a contract whereby Sumitomo agreed to construct for and sell to Parakopi a bulk carrier.[1] Oshima, as the builder, agreed to be bound by all the terms and conditions of the contract applicable to it.

Section 1 of Article XIV of the purchase agreement provides for the resolution of all non-technical disputes by arbitration in New York:

> Should any dispute arise between the parties in regard to the construction of the VESSEL, her engines and/or materials or to any other technical matters, such dispute shall forthwith be referred to the Principal Surveyor of the Classification Society in Japan, whose opinion shall be final and binding upon both parties hereto. Any other dispute arising under or by virtue of this Contract or any difference of opinion between the parties hereto concerning their rights and obligations under this Contract . . . shall be settled by arbitration in New York, New York in accordance with the rules of the United States Arbitration Act.

Under section 2 of Article XIV, a party seeking arbitration must serve a written demand for arbitration on the other side and designate an arbitrator. The other party is obligated, within 20 days after re-

Reid & Priest, New York City, for petitioners by Charles F. Schirmeister, John M. Nonna, New York City, of counsel.

Cardillo & Corbett, New York City, for respondent by Robert V. Corbett, Tulio R. Prieto, New York City, of counsel.

## OPINION

WERKER, District Judge.

Petitioners Sumitomo Corporation ("Sumitomo") and Oshima Shipbuilding Co., Ltd.

---

1. The contract was negotiated in New York and executed in Greece.

ceiving the written demand, to designate its arbitrator. The two arbitrators are then to select a third arbitrator, and the three arbitrators will constitute the arbitration panel.

The vessel was completed in 1977 and was delivered to and accepted by Parakopi in June of that year. Under the terms of the contract, the purchase price of the vessel was fixed in terms of Japanese yen. Some 70 per cent of the purchase price was to be paid over a seven-year period in 14 semi-annual installments. Although Parakopi has been paying the installments due to date, it commenced an action in Greece in January 1979[2] seeking to be relieved of its obligations under the contract on the basis of unforeseeable circumstances, i. e., the sharp rise in value of the yen against the dollar,[3] and on the ground of fraud, i. e., the petitioners' alleged fraudulent concealment from Parakopi of knowledge that the yen would increase in value.[4] See exh. B to Petition To Compel Arbitration and for Appointment of Arbitrator.

Petitioners served a demand for arbitration of the matter in controversy on Parakopi in April 1979 and designated an arbitrator pursuant to section 2 of Article XIV of the contract. Although Parakopi did subsequently select an arbitrator, its arbitrator refused to proceed with the selection of a third arbitrator. Thereafter, it became apparent that Parakopi was not going to voluntarily proceed to arbitration, and petitioners commenced this action.

Parakopi's opposition to the petition is predicated on four arguments: (1) that the parties entered into a stipulation which precludes the petitioners from taking any action to proceed to arbitration until October 19, 1979; (2) that the Court lacks subject matter jurisdiction; (3) that the petitioners' proper remedy is to seek a stay of the suit in Greece from a Greek court; and (4) that even assuming this Court has jurisdiction, it should defer to the Greek litigation for reasons of comity. See Respondent's Mem. of Law in Opp. to Petitioner, at 2.

## DISCUSSION

### A. Preclusion by Stipulation

■ As noted above, Parakopi commenced an action in Greece in January 1979. Service upon Sumitomo and Oshima was made in March 1979. A hearing was scheduled for May 18, 1979, and Sumitomo and Oshima had until that date to answer the complaint. In April 1979, petitioners' attorneys in Greece advised Parakopi's Greek lawyers that they intended to seek an adjournment of the May 18th hearing and deadline. Although Parakopi consented to an adjournment until October 19, 1979, it presently contends that it gave its consent to an adjournment only because petitioners agreed that they would not take further steps to proceed to arbitration until after the new hearing date. Parakopi thus argues that petitioners are precluded from seeking an order compelling arbitration and

2. It is unclear whether Parakopi commenced one or two actions in Greece. Compare Petition To Compel Arbitration and for Appointment of Arbitrator, ¶ 8, with Respondent's Mem. in Opp. to Petition, at 14. If there are two lawsuits, they are apparently companion cases being litigated jointly. According to Parakopi, both suits involve the validity of the arbitration clause herein in issue, both lawsuits are scheduled to be heard on Oct. 19, 1979, both lawsuits having been adjourned at petitioners' request. Respondent's Mem. in Opp. to Petition, at 14. Hence, for purposes of the issues presently before the Court, this factual discrepancy is insignificant and it will be assumed that only one action is pending.

3. According to Parakopi's calculations, the vessel's value in U. S. dollars at the time the contract was entered into was $10,197,000,

computed at a rate of 304 yen per dollar. By January 1979, the exchange rate had apparently changed to 180 yen per dollar. Hence, the contract price in U. S. dollars had apparently increased to $17,222,000, even though the contract price in terms of Japanese yen remained the same. See exh. B to Petition To Compel Arbitration and for Appointment of Arbitrator.

4. Parakopi's charge of fraudulent concealment rests on its assertion that the petitioners assured it that it had "nothing to fear from the payment of the debt in yen" when they knew that the value of the yen would rise through their close relationship with the Export-Import Bank of Japan. See exh. B to Petition To Compel Arbitration and for Appointment of Arbitrator.

appointing a third arbitrator by virtue of this stipulation.

Parakopi's argument must be rejected. While the petitioners did agree to refrain from taking further steps to proceed to arbitration, they did so only on the condition that Parakopi appoint an arbitrator pursuant to the written demand for arbitration and on the condition that a third arbitrator be selected prior to the new date of the adjourned hearing. Although Parakopi maintains that this was not the substance of the stipulation, the documents show otherwise. *See* affid. of Costas K. Kyriakides, sworn to Sept. 7, 1979, exhs. A–E.[5] Since Parakopi prevented the second condition from being met by ordering its arbitrator to refuse to select a third arbitrator, the petitioners were not bound by their conditional agreement to refrain from proceeding to arbitration pending the hearing in Greece.

### B. *Subject Matter Jurisdiction*

■ Petitioners commenced this action under the Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the "Convention"), 21 U.S.T. 2517, T.I.A.S. No. 8052. Subject matter jurisdiction is claimed under 9 U.S.C. § 203, which provides:

An action or proceeding under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

In contending that this Court lacks subject matter jurisdiction over the instant petition, Parakopi relies on 9 U.S.C. §§ 1 and 202. Section 202 provides than an arbitration agreement or arbitral award falls under the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial . . . ." Section 1 of Title 9 defines "commerce" as follows:

"commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and any State or foreign nation . . . .

Citing cases holding that "commerce" as defined by 9 U.S.C. § 1 does not include commerce involving only foreign parties,[6] Parakopi argues that "commercial" disputes involving only foreign entities should also be excluded from coverage under 9 U.S.C. §§ 202 and 203. I disagree.

The language of the relevant sections of the statute does not support Parakopi's assertion that the definition of "commerce" in section 1 controls the scope of section 202. First of all, section 202 does not use the term "commerce" at all, but utilizes the term "commercial." Secondly, section 202 uses "commercial" in a substantive rather than geographical sense, while section 1 does not substantively define "commerce" at all, defining it only in geographical terms. Section 202 refers to "a legal relationship . . . which is considered as commercial," while section 1 provides that " 'commerce' . . . means commerce

---

5. The affidavit of Athanasios P. Liapis, sworn to Sept. 21, 1979, relies on these very same documents. Exhibit D, a copy of a telex from Sumitomo to its New York counsel, states in pertinent part:

WE HAVE, AFTER FURTHER DISCUSSIONS OF THE MATTER, DECIDED TO ACCEPT [PARAKOPI'S] REQUEST FOR THE POSTPONEMENT OF THE ARBITRATION PROCEEDINGS SUBJECT TO THE FOLLOWING CONDITIONS:
(A) [PARAKOPI'S] SHALL APPOINT ITS OWN ARBITRATOR WITHIN THE TIME STATED IN OUR DEMAND FOR ARBITRATION.

(B) THE THIRD ARBITRATOR SHALL BE APPOINTED PRIOR TO THE EXTENDED COURT HEARING DATE.
IF THE PLAINTIFF DOES NOT CONSENT TO THE ABOVE CONDITIONS, WE CAN NOT ACCEPT ITS REQUEST ABOVE MENTIONED.
Exh. D to affid. of Costas K. Kyriakides, sworn to Sept. 7, 1979.

6. *The Volsinio*, 32 F.2d 357 (E.D.N.Y.1929); *Petroleum Cargo Carriers, Ltd. v. Unitas, Inc.*, 31 Misc.2d 222, 220 N.Y.S.2d 724 (Sup.Ct.N.Y.Co. 1961), *aff'd*, 15 App.Div.2d 735, 224 N.Y.S.2d 654 (1st Dep't 1962).

among the several States or with foreign nations . . . ." Moreover, in limiting the application of the Convention to "commercial" disputes, the United States did not make reference to 9 U.S.C. § 1; instead it referred to "legal relationships . . . which are considered as commercial under the national law of the United States." Convention, n.29. While 9 U.S.C. § 1 is certainly part of the national law of the United States, it does not constitute all of the national law of the United States. In delineating the coverage of the Convention, Congress explicitly excluded purely domestic transactions. 9 U.S.C. § 202. Had Congress also intended to exclude purely foreign transactions, it undoubtedly would have done so explicitly as well.

The fact that 9 U.S.C. § 1 is part of Chapter 1 of the Arbitration Act while 9 U.S.C. § 202 is part of Chapter 2 is also an indication that section 1 does not control section 202. Chapter 1 existed prior to the United States' accession to the Convention, and indeed was not designated as "Chapter 1" until the provisions implementing the convention were added to Title 9 as Chapter 2. *See* Act of July 31, 1970, Pub.L. No. 91–368, 84 Stat. 692. The provisions of Chapter 1 apply to proceedings brought under Chapter 2 only to the extent that they do not conflict with the provisions of Chapter 2 or the Convention. 9 U.S.C. § 208.

Concluding that the Court has subject matter jurisdiction over this matter would certainly further the policies underlying the Convention. The Supreme Court has noted that:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). To hold that subject matter juris-

diction is lacking where the parties involved are all foreign entities would certainly undermine the goal of encouraging the recognition and enforcement of arbitration agreements in international contracts.

Finally, although the issue of whether the scope of Chapter 2 is limited by the definition of "commerce" in Chapter 1 has not been previously addressed, American courts have applied the Convention to situations involving only foreign entities. *Beromun Aktiengesellschaft v. Societa Industriale Agricola "Tresse,"* 471 F.Supp. 1163 (S.D.N.Y.1979); *Ipitrade International, S.A. v. Federal Republic of Nigeria,* 465 F.Supp. 824 (D.D.C.1978); *Ferrara S.p.A. v. United Grain Growers, Ltd.,* 441 F.Supp. 778 (S.D.N.Y.1977), *aff'd mem.,* 580 F.2d 1044 (2d Cir. 1978); *Antco Shipping Co. v. Sidermar S.p.A.,* 417 F.Supp. 207 (S.D.N.Y.1976), *aff'd mem.,* 553 F.2d 93 (2d Cir. 1977).

Accordingly, the request for dismissal of the petition for lack of subject matter jurisidiction is denied.

### C. *Propriety of the Petition*

Parakopi's third defense is that the petitioners' proper remedy is to apply to the Greek court for a stay of the Greek proceedings. Parakopi contends that the petitioners do not have an arbitrable claim because they "cannot claim that [it] has breached the contract" and because "it has fully performed all of its contractual obligations." Respondent's Mem. of Law in Opp. to Petition, at 12. These claims, however clearly go to the merits of the underlying dispute and thus do not constitute grounds for dismissing the petition.

### D. *Comity*

Parakopi's fourth and final defense is premised on principles of international comity. Parakopi contends that this Court should stay or dismiss the instant proceeding in deference to the pending litigation in Greece. For the reasons which follow, this contention is rejected.

Comity is "the recognition which one national allows within its territory to the legislative, executive, or judicial acts of an-

other nation, having due regard both to international duty and convenience . . ." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). In deciding whether to accord comity to a decision of a foreign court, a forum court must determine whether the foreign court is one of competent jurisdiction and whether recognizing the foreign court's decision would violate the laws and policies. of the forum nation or state. *Id.* at 202–03, 16 S.Ct. 139; *Clarkson Co. v. Shaheen,* 544 F.2d 624, 629 (2d Cir. 1976); *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255, 1259 (S.D.N.Y.1979).

■ In the instant case, no legislative, executive or judicial act of another nation is involved. Although litigation is pending in Greece, all that has transpired is the filing of a complaint. The petitioners have not yet put in answers, and the Greek courts have not yet had to review the merits of the dispute herein in issue. Hence, compelling Parakopi to arbitration at this juncture would not in any way waste or duplicate the efforts of the Greek courts.

In interstate situations, federal courts have refused to permit a party to a contract to circumvent an arbitration clause by commencing litigation in a state court. *Commonwealth Edison Co. v. Gulf Oil Corp.,* 400 F.Supp. 888, 890 (N.D.Ill.1975), *aff'd,* 541 F.2d 1263 (7th Cir. 1976); *Burger Chef Systems, Inc. v. Baldwin, Inc.,* 365 F.Supp. 1229, 1233–34 (S.D.N.Y.1973); *Network Cinema Corp. v. Glassburn,* 357 F.Supp. 169, 172 (S.D.N.Y.1973). The principles espoused in these cases apply with equal force to an international situation such as the instant one. The parties herein clearly contracted to arbitrate all non-technical disputes arising from the contract in New York. The parties further agreed that New York law would apply. Both Greece and the United States are signatories to the Convention, and the Convention is clearly intended to foster "recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed . . . in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). In implementing the Convention, Congress clearly adopted the Convention's goals. These goals and the strong federal and New York policy in favor of arbitration would not in any way be furthered by recognizing and deferring to litigation pending in Greece which seeks to avoid arbitration. Accordingly, the comity defense must be rejected.

### CONCLUSION

In accordance with the above, the petition to compel arbitration and for the appointment of a third arbitrator is granted. The respondent is hereby ordered to submit to arbitration in New York, New York and the Hon. Samuel C. Coleman, of Two West 89th Street, New York, New York 10024, is hereby appointed as the third arbitrator.

SO ORDERED.