In the Matter of the Arbitration between Sigval BERGESEN, as Owners of the M.T. SYDFONN, FROSTFONN, and NORDFONN, Petitioner,

and

JOSEPH MULLER CORPORATION, Respondent.

No. 81 Civ. 7698–CSH.

United States District Court,
S. D. New York.

Oct. 7, 1982.

Healy & Baillie, New York City, for petitioner; Raymond A. Connell, Elisa M. Pugliese, New York City, of counsel.

Moore, Berson, Lifflander & Mewhinney, New York City, for respondent; Michael T. Sullivan, Michael R. Sonberg, New York City, of counsel.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Petitioner Sigval Bergesen, the Norwegian owner of three cargo vessels ("Bergesen"), commenced this action against respondent Joseph Muller Corporation ("Muller"), a Swiss corporation and charterer of the vessels, to confirm and enter judgment upon an award of arbitrators rendered in New York in favor of Bergesen and against Muller pursuant to arbitration clauses contained in the charter parties. Bergesen invokes the jurisdiction of this Court pursuant to Chapter 2 of 9 U.S.C., entitled "Convention on the Recognition and Enforcement of Foreign Arbitral Awards." 9 U.S.C. §§ 201–208 (the "Convention"). Muller contends that the arbitration award does not fall under the Convention, and that in consequence this Court lacks subject

matter jurisdiction. The case presents, in circumstances rendering its avoidance impossible, the question of whether the Convention, as implemented by United States law, applies to awards involving foreign interests but made in the United States, or only to awards involving such interests and made in foreign countries. The Second Circuit has noted the disagreement of commentators on this question, *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 426 n.2 (1974), and itself characterized the controversy as "intriguing" in *Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 699 n.11 (2d Cir. 1978), although finding it unnecessary to resolve the question in either case, or, so far as appears, in any other case.

This Court construes the Convention, as implemented by United States law, to apply to arbitration awards involving foreign interests and rendered in the United States. Accordingly the award will be confirmed, and judgment entered in Bergesen's favor.

### I.

The charter parties provided for the ocean carriage of cargoes consisting of vinyl chloride monomer ("VCM") and propylene between American, Caribbean, and European ports. There is no dispute that the charter parties contained enforceable arbitration clauses,[1] or that arbitrable disputes arose between the parties, or that, under date of December 14, 1978, an arbitration panel appointed in accordance with the terms of the clauses awarded Bergesen $61,406.09, with additional interest running at the rate of 8% per annum until payment. Bergesen has been attempting ever since to collect this amount, together with an additional $8,462.00 and interest representing payment by Bergesen of arbitrators' fees and expenses which should have been paid by Muller.

Bergesen's initial effort at collection took the form of an action commenced in the courts of Switzerland in May, 1979. Certain details of that litigation are furnished in the affidavit of Dr. C. Mark Bruppacher, counsel for Bergesen, submitted on the present motion. I do not pretend to understand all the intricacies of Swiss law to which Dr. Bruppacher refers. It is sufficient to say that Bergesen has not yet obtained a recovery from Muller in the Swiss courts; and that Muller is resisting the Swiss action on the grounds that the arbitration award did not fall within the Convention, and that, in order to be enforceable as a judgment in Switzerland, "the award needed to be confirmed under

---

1. Clause 10 of the October 27, 1970 charter party provides as follows:

"If at any time there shall arise any controversies, disputes or claims relating to this Agreement, its performance or any alleged breach thereof, or any matter relating to the construction of interpretation of this Agreement, which cannot be amicably settled or disposed of by the parties, the same shall, upon the demand of either party hereto, be resolved by arbitration as herein provided. "The party demanding arbitration shall notify the other by registered mail, return receipt requested. Within 30 (thirty) days after mailing such letter, each party shall nominate one arbitrator who shall be persons actively and commercially connected with the VCM product, international business and experts in the LPG chemical gas transportation. The two arbitrators so appointed shall, by mutual agreement, appoint a third arbitrator, who shall serve as Chairman or Umpire. If either of the parties fails or refuses to agree on the person to act as Chairman or Umpire within 60 (sixty) days after the demand for arbitra-

tion, the Chairman of the American Arbitration Association will, on the application of either party, appoint the theretofore non-appointed arbitrator or Chairman, or both, as the case may be, provided, however, the person or persons so appointed shall be actively and commercially connected with the VCM product, international business and an expert in LPG gas transportation. The arbitration shall take place in New York, New York, and shall be governed by the Laws of the State of New York, and the award when made by a majority of the arbitrators may be enforced in any court which shall have jurisdiction, and shall be final and binding on the parties anywhere in the world. "Each party shall pay the costs and expenses of the person appointed by him, the costs and expenses of the other arbitrator and/or Chairman shall be paid by the person designated by the majority."

A comparable clause appears in the March 5, 1971 charter party, that being the second of the two charter parties giving rise to disputes between Bergesen and Muller.

the New York Civil Practice Law and Rules § 7150." Bruppacher affidavit of February 16, 1982 at ¶ 5.

If Muller is correct in those contentions—namely, that confirmation of the arbitration award in New York is a condition precedent to an enforceable judgment in Switzerland, and that this case does not fall under the Convention—then Muller may escape liability entirely. That is because it is now too late for Bergesen to move to confirm the award and for entry of judgment under either NYCPLR § 7510 or its counterpart, the Federal Arbitration Act of 1947, 9 U.S.C. §§ 1–14.[2] Under either statute, the motion to confirm the arbitration award must be made within one year of the award. NYCPLR § 7510; 9 U.S.C. § 9. The Convention, however, extends a potential lifeline to Bergesen in the form of 9 U.S.C. § 207, which permits an application to a court having jurisdiction for an order of confirmation "[w]ithin three years after an arbitral award falling under the Convention is made..." It is that lifeline which Muller seeks to snatch from Bergesen's grasping fingers. The case turns upon whether or not the award is one "falling under the Convention."

## II.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards was adopted at the conclusion of a United Nations conference which was held in New York in 1958. The United States implemented the Convention by enacting Chapter 2 of the Federal Arbitration Act, on July 31, 1970, Pub.L. 91–368, 84 Stat. 692, by which time the Convention was already in effect in 34 other countries.

The scope of the Convention, as enacted into United States law, is delineated in 9 U.S.C. § 202, which provides:

"*Agreement or award falling under the Convention.* An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States."

The legislative history says of this section: "Section 202 defines the agreements or awards that fall under the Convention. The second sentence of section 202 is intended to make it clear that an agreement or award arising out of a legal relationship exclusively between citizens of the United States is not enforceable under the Convention in U.S. courts unless it has a reasonable relation with a foreign state." H.R.Rep. No. 91–1181, 91st Cong., 2d Sess. 2, reprinted in [1970] U.S.Code Cong. & Ad.News 3601, 3602.

Confirmation of an award under the Convention is provided for by 9 U.S.C. § 207, which reads in its entirety:

"Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

It has been held that where entirely foreign interests agree to arbitrate in New York disputes arising out of their commercial relationship, this Court has jurisdiction under the Convention to compel arbitration

---

**2.** These arbitration agreements, providing for arbitration in New York, and being contained in maritime transactions, fall within both NYCPLR §§ 7510, 7511 and the Federal Arbitration Act. See, generally, *I/S Stavborg, supra,* at 430 n.12.

and, if need be, appoint an arbitrator. *Sumitomo Corp. v. Parakopi Compania Maritima, S.A.,* 477 F.Supp. 737 (S.D.N.Y.1979), aff'd, 620 F.2d 286 (2d Cir. 1980).[3] The case at bar presents the question of whether the Convention's provisions with respect to confirming the arbitrators' award also apply where foreign interests agree to arbitration in New York. To sustain its contention that this question must be answered in the negative, Muller must demonstrate a Congressional intent, express in the implementing statute or implicit in its purpose or legislative history, to exclude from the enforcement provisions of the Convention arbitration agreements between foreigners calling for arbitration in New York.

The difficulty Muller faces is that when Congress, in enacting Chapter 2 of the Federal Arbitration Act, intended to exclude certain transactions or proceedings, it knew how to do so. Thus, as we have seen, 9 U.S.C. § 202 provides in part:

> "An agreement *or award* arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." (emphasis added).

In *Sumitomo Corp., supra,* Judge Werker of this Court rejected a contention that an arbitration agreement solely between foreign parties did not fall under the Convention as implemented in this country by the Congress:

> "In delineating the coverage of the Convention, Congress explicitly excluded purely domestic transactions. 9 U.S.C. § 202. Had Congress also intended to exclude purely foreign transactions, it undoubtedly would have done so explicitly as well." 477 F.Supp. at 741.

Here we deal, not with enforcement of the agreement to arbitrate, but with enforcement of the subsequent award. Had Congress, in delineating the coverage of the enforcement provisions of the Convention, desired to exclude awards rendered in the United States as opposed to a foreign country, it would equally undoubtedly have made that exclusion explicit. But there is no such limitation upon the awards entitled to enforcement under the Convention. Furthermore, the statute by which the Convention became a part of United States law is broad and remedial. 9 U.S.C. § 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," so that the district courts have original jurisdiction without regard to the amount in controversy. Under § 204, an alternative venue for "an action or proceeding" under the Convention is the district court "which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." Section 206 empowers the district court to compel arbitration in accordance with the agreement, "whether that place is within or without the United States." Thus Congress specifically contemplated an arbitration agreement, falling under the Convention, which provided for arbitration in the United States (such as New York). No logical reason is suggested why a United States District Court, specifically granted jurisdiction and venue over such an agreement, and given the power to compel arbitration, should be denied the power to enforce the subsequent award.

No express language in the implementing statute requires that result. Although the legislative history is relatively sparse, what statements there are militate in favor of a broad construction of the Convention's remedies. Thus the House Report states:

> "In the committee's view, the provisions of S. 3274 will serve the best interests of

---

**3.** The case turned on the Convention's provisions for compelling arbitration and appointing arbitrators, which appear in 9 U.S.C. § 206:

"A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement."

Americans doing business abroad by encouraging them to submit their commercial disputes to impartial arbitration for awards which can be enforced in both U.S. and foreign courts." [1970] U.S. Code Cong. & Ad.News at 3602.

If Muller's narrow construction of the Convention, as implemented in the United States, is accepted, Americans could not enter into arbitration agreements with foreign interests providing for arbitration in New York, and be assured of enforcement of an award in a United States court.

Similarly, the Department of State in writing to the Speaker of the House of Representatives in support of the implementing statute, spoke of the support which the legislation had received from a number of interested bodies, and went on to say:

"The consensus of the group, with which the Department of Justice concurs, was that rather than amending a series of sections of the Federal Arbitration Act it would be preferable to enact a new chapter dealing exclusively with recognition and enforcement of awards falling under the Convention. This approach would leave unchanged the largely settled interpretation of the Federal Arbitration Act. Moreover, it would avoid complicated interlineations which, while facilitating implementation of the Convention, might also mislead or confuse persons dealing with cases falling under the Federal Arbitration Act but not under the Convention." *Id.* at 3603.

Again, this language militates in favor of a broad application of the Convention principles unfettered by technical limitations.

In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 2457 n.15, 41 L.Ed.2d 270 (1975), the Supreme Court said of the Convention:

"The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."

While the arbitration involved in *Scherk* took place before the International Chamber of Commerce in Paris, the Court nonetheless speaks broadly in respect of the Convention's goal "to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." That is a uniformity which Muller's narrow view of the Convention's award enforcement remedies would diminish.

For these reasons, (though concededly not fully articulated), I have previously held that enforcement of an arbitration award rendered in New York, in disputes arising out of charter parties between foreign corporations, falls within the Convention. *Transmarine Seaways Corp. v. Marc Rich & Co., A.G.*, 480 F.Supp. 352 (S.D.N.Y.1979). I appreciate that in *Diapulse Corporation of America v. Carba, Ltd.*, 78 Civ. 3263 (VLB) (S.D.N.Y., 1979), *remanded on other grounds*, 626 F.2d 1108 (2d Cir. 1980), Judge Broderick reached a different conclusion with respect to the applicability of the Convention to the enforcement of a New York arbitration award in which one of the two parties was foreign, but he gave no analysis for his conclusion, and in any event, and with due respect, I could not follow it.

Thus if we look only to the statute by which Congress made the Convention a part of United States law, this Court's subject matter jurisdiction in the case at bar is manifest.

### III.

But Muller argues that the Convention "by its own terms" excludes enforcement of this award in the United States from its scope. Muller relies upon Article I(1) of the Convention itself, which provides as follows:

"This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences be-

tween persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought."

In Muller's view, under Article I(1), the award cannot be enforced if New York would regard it as "domestic"; and it must be so characterized, the argument runs, since the award was rendered in New York in an arbitration conducted by the American Arbitration Association, with New York counsel appearing for the parties, and the award, limited to money damages, being payable in dollars.

I accept the proposition that the Congress, in the guise of ratifying or implementing the Convention, could not include provisions contrary to the express and unambiguous enactments of the latter instrument. But this has not occurred. Analysis of Article I(1) of the Convention reveals that it may be read in harmony with the American implementing statute, in such a way as to vest this Court with subject matter jurisdiction in the case at bar.

The first paragraph of Article I has been characterized as "one of the most controversial clauses in the Convention." [4] The conferees' purpose was to draft a Convention on the recognition and enforcement of "foreign arbitral awards"; but the question immediately arose, what was a "foreign award"?

The original draft Convention, prepared by an *ad hoc* committee of governmental experts from eight countries,[5] prepared a draft in which Article I was substantially the same as the first sentence of Article I(1) as the Convention finally emerged.[6] Thus, in the Committee's draft, the concept of "foreign award" was limited to awards rendered in a country other than that where enforcement was sought. The delegates of certain nations took the position that this solely territorial criterion "was not adequate to establish whether an arbitral award should be regarded as foreign or domestic. The nationality of the parties, the object of the dispute, and the rules of arbitral procedure were other factors which should be taken into account in determining the nationality of an award," the place where the award is made often being chosen "merely as a matter of convenience..." [7] France, for example, took the position that an award made in France under foreign law should be regarded as a non-domestic, and hence a "foreign" award.[8]

The Conference set up a working committee to deal with this question. As the Conference progressed, the second sentence was added to Article I(1). Thus, Article I(1) as enacted contains two criteria for determining whether or not an award is "foreign," and thus falling within the Convention: the first criterion appears in the first sentence of the Article, and the second criterion appears in the second sentence. The efforts of that working committee, which eventually found their way into the Convention, are summarized thus:

"In the Working Party of ten states appointed to deal with this problem, it was decided to leave in both criteria: that which determines whether an award is foreign by the place where it is made and that which leaves it to the state where enforcement is sought to determine whether or not the award is domestic." [9]

In order to meet the continuing objections of certain states, a provision was later add-

---

4. Contini, International Commercial Arbitration: The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 8 Am.J.Comp.L. 283, 292 (1959).

5. Contini, *op. cit.* at 290.

6. G. W. Haight, Convention of the Recognition and Enforcement of Foreign Arbitral Awards, Summary Analysis of Record of United Nations Conference, May/June 1958, at 1.

7. Contini, *op. cit.* at 292.

8. Quigley, Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale L.J. 1058, 1061 (1961).

9. Haight, *op. cit.* at 4.

ed "permitting the state to limit recognition and enforcement to awards made only in the territory of another contracting state."[10] That provision appears in Article I(3), which provides:

"When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State may on the basis of reciprocity declare that it will apply to the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State. It may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration."

In consequence of all this, and as one commentator has written:

"The language of the first paragraph of Article I seems to permit only one construction, i.e. that, except as provided in paragraph 3, the Convention applies to all arbitral awards rendered in a country other than the state of enforcement, whether or not any of such awards may be regarded as domestic in that state; it also applies to all awards not considered as domestic in the state of enforcement, whether or not any of such awards may have been rendered in the territory of that state."[11]

Addressing the criteria of eligibility under the Convention for the enforcement of an arbitral award as "foreign," another commentator has written:

"In this two-limb formula, the old criterion of eligibility emerges liberalized of the requirements of territoriality and stripped of the conditions of citizenship and reciprocity which were paramount hitherto. Under the first limb, although the territoriality principle remains partially operative in the sense that the award must have been rendered outside the jurisdiction of the enforcing forum, a

petitioner whose award happened to be pronounced in the territory of a state not subject to the Convention may well be entitled to relief in the courts of one of the contracting states. Under the second limb, the maxim *locus regit actum* is further modified in that an award relating to an international transaction rendered in the territory where enforcement is requested is not solely governed by its municipal law, but may also qualify under the regime established by the Convention. A patent, if largely deliberate, ambiguity is left by the absence of any definition of 'nondomestic' awards. The intention behind this omission is to extend as far as possible the variety of eligible awards while at the same time allowing the enforcing authority to supply the definition in conformity with its own law."[12]

Since the second criterion for eligibility in Article I(1) of the Convention, embodied in the second sentence thereof, looks to the law of the enforcing state as to whether or not the award falls under the Convention, we return to 9 U.S.C. § 202, quoted *supra.* And, as noted, in that section the Congress saw fit to exclude from the Convention only "[a]n agreement or award" arising out of a commercial relationship "which is entirely between citizens of the United States," unless significant foreign contacts are involved. Congress could have, under the Convention, enacted § 202 to define arbitral awards rendered in the United States between foreign commercial disputants as "domestic" within the context of Article I(1) of the Convention, and hence beyond the subject matter jurisdiction of this Court as conveyed by the implementing statute. Alternatively, Congress could have used the power of reservation contained in Article I(3) of the Convention to limit enforcement in the United States under the Convention to awards rendered in other contracting states. Either provision would have branded the award at bar "domestic" and unenforceable in this forum. But Congress

---

10. *Id.* at 1.

11. Contini, *op. cit.* at 293–94.

12. Pisar, The United Nations Convention on Foreign Arbitral Awards, 33 So.Cal.L.Rev. 14, 18 (1959).

adopted neither of these alternatives. And by refraining from such limiting action, Congress manifested its intention "to extend as far as possible the variety of eligible awards" under the Convention, by means of supplying its own broad but legally permissible definitions.[13]

### CONCLUSION

The petition to confirm the award of the arbitrators, and to enter judgment thereon, is granted. Counsel for petitioner are directed to settle order and judgment, on five (5) days' notice, within the next ten (10) days, failing which the Court will enter its own order and judgment.