In the Matter of the Arbitration between WATERSIDE OCEAN NAVIGATION CO., INC., Petitioner-Appellee-Cross-Appellant,

and

INTERNATIONAL NAVIGATION LTD., Respondent-Appellant-Cross-Appellee.

Nos. 1138, 1296, Dockets 83–9016, 84–7184.

United States Court of Appeals, Second Circuit.

Argued May 11, 1984.

Decided June 18, 1984.

John S. Rogers, New York City (Burlingham, Underwood & Lord, New York City, of Counsel), for respondent-appellant-cross-appellee.

John H. Gross, New York City (Anderson, Russell, Kill & Olick, P.C., New York

City, of Counsel), for petitioner-appellee-cross-appellant.

Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and LASKER, District Judge.*

FEINBERG, Chief Judge.

International Navigation, Ltd. (INL), appeals from an order of the United States District Court for the Southern District of New York, Mary Johnson Lowe, J., confirming five arbitration awards entered in London in favor of appellee Waterside Ocean Navigation Co., Inc. (Waterside). In turn, Waterside cross-appeals from an order of Judge Lowe denying it post-award, pre-judgment interest. On the main appeal, we consider the scope of the public policy defense to the confirmation of foreign arbitral awards under 9 U.S.C. § 207, which was enacted to implement the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention). On the cross-appeal, we consider whether district courts may grant post-award, pre-judgment interest when confirming awards pursuant to the Convention. For reasons given below, we affirm on the appeal, and reverse and remand on the cross-appeal.

### I.

In October 1975, INL, as disponent owner, and Waterside, as charterer, entered into a charter party pursuant to which Waterside agreed to hire from INL the vessel "LAURENTIAN FOREST." The agreement called for the arbitration of disputes in London, England.

In 1976, a dispute arose between the parties. Following judicial proceedings in Canada—which are not directly relevant to this opinion—the matter was submitted to arbitration in London. In May 1982, the arbitrators entered an interim award in favor of Waterside on the issue of liability only. Subsequently, between August 1982 and March 1983, the arbitrators entered four further awards, granting damages to Waterside.

Waterside then applied to the United States District Court for the Southern District of New York for confirmation of the five awards. It also sought post-award, pre-judgment interest. INL opposed confirmation and presented a counterclaim based on fraud. In November 1983, Judge Lowe confirmed the awards in the sum of $1,634,442.33 and 15,754 pounds sterling, and dismissed the counterclaim. In a subsequent order, Judge Lowe denied Waterside's request for post-award, pre-judgment interest, holding that she did not have jurisdiction "to go beyond confirmation" of the awards. These appeals ensued.

### II.

INL argues that confirmation of the awards pursuant to 9 U.S.C. § 207 is inconsistent with the public policy of the United States. Its argument stems from the allegation that the awards on damages were based in critical respects on the testimony before the arbitrators of Waterside's owner and chief executive officer, Thomas J. Holt, which allegedly contradicted testimony that Holt had given in prior judicial proceedings. According to INL, the confirmation of the award would be contrary to "this nation's public policy against granting relief on the basis of sworn testimony directly contradictory to prior sworn testimony, and in favor of the sanctity of the oath and maintenance of the integrity of the judicial system." INL also contends that confirmation would be contrary to the public policy against fraud.

■ We find little merit in INL's position. The public policy defense to confirmation under the Convention is set out in Article V, paragraph 2, which states in pertinent part:

> Recognition and enforcement of an arbitral award may ... be refused if the

* Honorable Morris E. Lasker, Senior United States District Judge for the Southern District of New York, sitting by designation.

competent authority in the country where recognition and enforcement is sought finds that:

. . . .

(b) The recognition and enforcement of the award would be contrary to the public policy of that country.

This defense must be construed in light of the overriding purpose of the Convention, which is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974); see *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 933 (2d Cir.1983); *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir.1975); *Parsons & Whittemore Overseas Co. v. Societe Generale de l'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir.1974). Thus, this court has unequivocally stated that the public policy defense should be construed narrowly. It should apply only where enforcement would violate our "most basic notions of morality and justice." *Fotochrome, Inc.*, supra, 517 F.2d at 516; *Parsons & Whittemore*, supra, 508 F.2d at 974.

The allegedly inconsistent testimony here relates to whether Waterside subchartered the LAURENTIAN FOREST to a company called Marine Transport Services, Inc. (MTS) and received charter hire payments in return. This question is important because, following the interim award on liability, INL argued to the arbitrators that Waterside had in fact subchartered the vessel to MTS and, thus, that any damages sustained were in fact sustained by MTS, not by Waterside.

INL maintains that in preparing for the first hearing on damages it learned that Holt had testified in proceedings in the United States District Courts for the Southern District of New York and the Eastern District of Pennsylvania that Waterside had subchartered the vessel to MTS. INL

maintains that similar testimony was given by Waterside's treasurer and an MTS vice-president.

However, at a hearing before the arbitrators in September 1982, Holt testified that MTS was merely a general agent for Waterside. He stated that his prior use of the word "charter" to describe the relationship between these two companies had been "poor terminology" because MTS was not "involved in the profits or losses of the LAURENTIAN FOREST." Following this hearing, Waterside brought to the attention of the arbitrators the prior, allegedly inconsistent testimony.

The arbitrators apparently credited Holt's testimony at the September 1982 hearing. Indeed, in their third and fourth interim awards they explicitly found that the vessel had not been subchartered to MTS.

■ On the record before us, we find that confirmation of the awards would not be contrary to the public policy of the United States. We note that appellant has made clear in this court that it does not claim that Waterside knowingly presented perjured testimony to the arbitrators in London, or even that the testimony was perjurious. Appellant claims only that directly inconsistent testimony was given in different proceedings. We believe that the assertion that the policy against inconsistent testimony is one of our nation's "most basic notions of morality and justice" goes much too far.

Appellant also claims that refusing to enforce the award here would maintain "the integrity of the judicial system," and we regard this as the essence of its argument. We agree that it is important that a litigant not be encouraged to "blow hot and cold" in a series of proceedings. See *Ronson Corp. v. Liquifin Aktiengesellschaft, Liquigas*, S.p.A., 375 F.Supp. 628, 630 (S.D. N.Y.1974); *Gottesman v. General Motors Corp.*, 222 F.Supp. 342, 344–45 (S.D.N.Y. 1963). But there are competing considerations. As Judge Lowe noted, appellant's view would require courts, whenever such a claim is made, to determine whether al-

leged inconsistencies actually exist and how significant they are. This would render the allegedly simple and speedy remedy of arbitration a mockery. Indeed, appellant has already gone a long way toward achieving that result in this seven-year old dispute, resisting confirmation of the award by litigation in three countries: England, Canada and the United States. We believe that accepting appellant's position would open the door to progressive emasculation of the Convention, which, as Judge Lowe pointed out, "was intended to remove obstacles to confirmation, not to create them."

Moreover, the case for confirmation of the awards here is particularly strong because the arbitrators were presented with the allegedly inconsistent testimony. We by no means suggest that confirmation should have been denied even if the arbitrators had been unaware of this testimony—although, of course, the argument against confirmation would have been stronger in that case. Cf. *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir. 1981). In any event, whatever remedies the parties injured by the prior, allegedly inconsistent testimony may have in the judicial proceedings in which that testimony was given, we do not believe that confirmation of the arbitration awards should be denied.

■ INL also argues that enforcement of the awards would be contrary to this nation's public policy against fraud, and that the district court erred in dismissing its counterclaim for fraud. We believe that the former claim adds little to the arguments already discussed. As for the latter, the counterclaim was based on the allegation that Waterside "procured the arbitration awards by fraud by virtue of its initial concealment and implicit misrepresentation of its relationship with MTS, and its subsequent explicit misrepresentation of its business relationship with MTS...." Given that INL learned of the prior, allegedly inconsistent testimony before the first hearing on damages, and that the inconsistencies were presented to the arbitrators, it

is difficult to see how the supposed concealment may have helped Waterside in the arbitration. Cf. *Alberta Gas Chemicals, Ltd. v. Celanese Corp.*, 650 F.2d 9, 12 (2d Cir.1981). INL does not even attempt to provide such an explanation. We also repeat that the arbitrators heard Holt's testimony at the arbitration hearing and were aware of his prior testimony. Under these circumstances, we see no reason why INL should prevail on its counterclaim. See *Karppinen v. Karl Kiefer Machine Co.*, 187 F.2d 32, 35 (2d Cir.1951). In holding that the district court properly rejected this counterclaim, we do not address the issue whether counterclaims may ever be raised in confirmation proceedings under 9 U.S.C. § 207.

### III.

Next, we consider whether the district court erred in concluding that the Convention precluded it from granting post-award, pre-judgment interest. As far as we can tell, this is a question of first impression for our court and one that has received little attention in other jurisdictions.

■ At the outset, we note that "[w]hether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." *Lodges 743 & 1746, International Association of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir.1975), cert. denied, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). Consistent with this general principle, we have repeatedly recognized the power of district courts to award pre-judgment interest. See, e.g., id. at 446–47; *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 516 F.2d 172, 191 (2d Cir.1975), rev'd on other grounds, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *The Wright*, 109 F.2d 699, 702 (2d Cir.1940); see also *Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962).

■ Absent persuasive reasons to the contrary, we do not see why pre-judgment

interest should not be available in actions brought under the Convention. First, the Convention provides that such actions "shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Second, the Convention is silent on the question of pre-judgment interest. Third, the same policy considerations that call for the award of pre-judgment interest in the cases that we have cited above call for such awards in cases involving arbitration under the Convention. In these days in which all of us feel the effects of inflation, it is almost unnecessary to reiterate that only if such interest is awarded will a person wrongfully deprived of his money be made whole for the loss.

In opposing the grant of post-award, pre-judgment interest, INL does not present any reasons, let alone persuasive reasons, that would overcome our presumption in favor of pre-judgment interest. Instead, it states in a conclusory fashion that under the Convention the district court "can give [Waterside] no more than it has been given by the awards." Furthermore, our own independent review of the facts of this case does not suggest that post-award, pre-judgment interest is inappropriate. First, the district court found—and the parties do not dispute—that the English arbitrators lacked the power to grant such interest. Thus, we need not fear that the arbitrators considered the issue and determined that the equities of the case did not call for the grant of interest. In fact, the arbitrators granted Waterside *pre*-award interest in all four damage awards.

Second, the district judge also found that Waterside could have obtained post-award, pre-judgment interest by seeking confirmation of the awards in English courts. The judge stated that "English law provides that an arbitration award carry interest from the date of the award at the same rate as a judgment debt, unless the award otherwise directs." INL does not challenge on appeal the district court's finding with respect to the applicable English law. We also note that the third interim award was converted to judgment in England and

that the English court included post-award interest in that judgment. These facts, we think, make the case for post-award interest particularly compelling. We do not think that the goals of the Convention would be served by having Waterside confirm the awards in England and then seek to enforce the English judgment in the United States. Indeed, it appears that the drafters of the Convention sought to avoid duplicative litigation of this type. See Note, Foreign Judgments Based on Foreign Arbitral Awards: The Applicability of Res Judicata, 124 U.Pa.L.Rev. 223, 226 & n. 16 (1975). In this circuit in particular, such litigation would seriously erode the Convention's overriding goal of promoting the enforcement of awards because we have held that the Convention applies only "to the enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards." *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1319 (2d Cir.1973), cert. denied, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974). Thus, if Waterside had attempted to enforce an English judgment confirming the awards, it could not have availed itself of the enforcement procedures of the Convention.

On a more general note, we point out that the concept of post-award interest is not alien to the Convention, and that arbitrators in many jurisdictions—including New York—have granted such interest. See, e.g., *Bergesen v. Joseph Muller Corp.*, 548 F.Supp. 650, 651 (S.D.N.Y.1982), aff'd, 710 F.2d 928 (2d Cir.1983); *Laminoirs-Trefileries-Cableries de Lens v. Southwire Co.*, 484 F.Supp. 1063, 1069 (N.D.Ga.1980). Also, district judges in the Southern District of New York have granted post-award, pre-judgment interest in both domestic and foreign arbitration cases. See *J. Lauritzen A/S v. Intertanker Ltd.*, 82 Civ. 1739, slip op. at 3 (S.D.N.Y. May 13, 1982) (arbitration under the Convention); *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 79 Civ. 510, slip op. at 1 (S.D.N.Y. May 9, 1979) (confirming commercial arbitration award under 9 U.S.C.

§ 9); In re Local 1115 Joint Board Nursing Home & Hospital Employees, 85 Lab.Cas. ¶ 10,949, at 19,669 (S.D.N.Y.1978) (confirming labor arbitration award under 9 U.S.C. § 9).

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for the computation of post-award, pre-judgment interest at an appropriate rate.