**FOTOCHROME, INC.,**
**Debtor-Appellant,**

v.

**COPAL COMPANY, LIMITED,**
**Claimant-Appellee.**

**No. 568, Docket 74–2082.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 30, 1975.

Decided May 29, 1975.

Raymond F. Gregory, New York City, for debtor-appellant.

Dugald Campbell Brown, New York City (Whitman & Ransom, William M. Kahn and Gillard S. Glover, New York City, of counsel), for claimant-appellee.

Before OAKES and GURFEIN, Circuit Judges, and TENNEY, District Judge.*

GURFEIN, Circuit Judge:

The parties to this appeal present some interesting questions concerning the impact of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention")[1] upon the provisions of the Bankruptcy Act. We find that there is no conflict between the Convention and the Act on the facts of this case. We accordingly affirm the order of Judge Weinstein, 377 F.Supp. 26 (E.D.N.Y. 1974), which held that a Bankruptcy Court does not have the power in a Chapter XI arrangement to relitigate the merits of a contract dispute which has been resolved by binding arbitration in a foreign forum, commenced before the filing of the Chapter XI petition and concluded thereafter by an arbitral award in the foreign country.

Fotochrome, Inc. ("Fotochrome"), a Delaware corporation with offices in the Eastern District of New York, and Copal Company, Ltd. ("Copal"), a Japanese corporation, neither present nor doing business in the United States, entered into a contract in 1966 under which Copal would manufacture cameras in Japan according to specifications provided by Fotochrome, and Fotochrome would purchase the cameras for distribution in the United States. A dispute arose in which each party charged the other with failure to abide by the terms of the contract. Copal claimed damages of $631,-501 for Fotochrome's breach of conditions in the contract and its failure to pay for delivered cameras; Fotochrome claimed damages of $828,582 for Copal's failure to meet the delivery schedule and for its manufacture of defective cameras.

The parties had agreed in their contract that final settlement of any disputes arising out of the contract would be reached by arbitration in Tokyo, Japan. In 1967, Copal filed a petition for arbitration with the Japan Commercial Arbitration Association ("JCAA"); Fotochrome filed a formal answer on July 31, 1967. The first of seventeen arbitral sessions was held by the JCAA on December 21, 1967. Fotochrome participated with Japanese counsel in all sessions except the last. Copal presented its evidence in sixteen sessions over the course of twenty-five months.

At the fourteenth session on October 1, 1969, Fotochrome's counsel asked to be allowed to examine two witnesses on his client's behalf. The tribunal scheduled examinations on October 31 and November 5, but the witnesses were not produced. Sessions were rescheduled for December 4 and, later, for January 27, but on each occasion, Fotochrome failed to produce its witnesses. On January 27, 1970 the arbitrators informed Fotochrome's counsel that if the witnesses did not appear at the next session, the arbitration might be terminated. The session was scheduled for March 31.

On March 26, 1970 Fotochrome filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., in the Eastern District of New York. Referee Sherman Warner issued an order on March 27 continuing Fotochrome as debtor in possession and enjoining "all creditors of the debtor . . . from commencing or continuing any actions, suits, *arbitrations*, or the enforcement of any claim in any Court against this debtor. . . ." (Emphasis supplied.) The restraining order, in terms, applied only to creditors, not to the debtor in possession. In any event, Fotochrome did not seek the court's permission to continue to participate in the JCAA arbitration, although it knew it was scheduled to present its case in Tokyo four days later.

---

\* Of the Southern District of New York, sitting by designation.

1. 21 U.S.T. 2517, T.I.A.S. 6997, 330 U.N.T.S. 38 (Dec. 29, 1970); implemented by 9 U.S.C. § 201 et seq.

On March 31, at the JCAA arbitral session, counsel for Fotochrome notified the tribunal that the petition had been filed in the United States District Court and that the stay had issued. He did not present the two witnesses as scheduled. On April 8, Fotochrome's counsel informed the JCAA that he had been discharged by his client. On April 9, the JCAA panel convened to consider the effect of Fotochrome's withdrawal and the stay order of the United States District Court. Copal urged the tribunal to proceed. On July 2, the tribunal decided that the bankruptcy court's stay was not effective with respect to it, and ordered the sessions terminated.

On September 18, the arbitral panel issued an award in favor of Copal in the amount of $624,457.80, plus interest from January 1, 1967. The tribunal resolved both Copal's claim and Fotochrome's counterclaim, which it dismissed, considering evidence supplied by both parties; it was unable, of course, to consider evidence that might have been supplied by the two witnesses Fotochrome had intended to present.

On October 21, Copal filed the arbitral award with the Tokyo District Court. As of that time, under Article 800 of the Japan Code of Civil Procedure, the award became in effect a final and conclusive judgment settling the rights and obligations of the parties in Japan.

On October 22, Copal filed a proof of claim in Fotochrome's bankruptcy proceedings in the amount of the arbitral award. Apparently in the belief that the Referee's stay would operate to bar proceedings to enforce the Japanese award in this country, Copal did not seek confirmation of the Japanese judgment either in the New York courts under the Act for the Recognition of Foreign Money Judgments, CPLR §§ 5301–09, or in a federal court under the Arbitration Act, 9 U.S.C. § 9, or the Convention, 9 U.S.C. § 207.

Fotochrome, as debtor in possession, challenged the claim presented to the Bankruptcy Court, and requested a hearing on the *merits* of Copal's underlying claim. Referee Parente, after a preliminary hearing, held that the Japanese award could not be treated as a final judgment in the bankruptcy proceeding and that the bankruptcy court would reconsider the merits of the underlying dispute. The Referee reasoned that under Section 2a(15) of the Bankruptcy Act, 11 U.S.C. § 11a(15), the restraining order of March 27 "effectively imposed [the Bankruptcy Court's] paramount authority over the estate of the debtor in possession ousting the jurisdiction of the Japan CAA." He ruled that the Japanese arbitral award, obtained after the filing of the petition for an arrangement, without authority of the Bankruptcy Court, was not binding on the debtor in possession and could be reopened for consideration on the merits in the Chapter XI proceeding.

Judge Weinstein reversed the Referee's order, holding that the restraining order of the Bankruptcy Court had no extraterritorial effect as such, Japan not being within the territorial limits subject to the jurisdiction of the Bankruptcy Court, Section 2a of the Bankruptcy Act, 11 U.S.C. § 11(a), and because Copal did not have the requisite minimum contacts with the United States to render it subject to the *in personam* jurisdiction of the Bankruptcy Court; that the award was a final judgment under Japanese law; and that the provisions of the bilateral treaty on Friendship, Commerce and Navigation between the United States and Japan (the "Japanese Treaty")[2] and the Convention entitled Copal to seek confirmation of its award as a judgment in the United States.[3]

The New York and federal statutes and the Convention provide for two stages: recognition of the award and its enforcement. CPLR § 5303; 9 U.S.C.

---

**2.** 4 U.S.T. 2063, T.I.A.S. 2863 (April 2, 1953).

**3.** As Judge Weinstein noted, though the United States acceded to the Convention after the contract in suit was signed and shortly after the award was made, the Convention contains no prospective language and should be applied retroactively to existing arbitration agreements and awards. 377 F.Supp. at 30, citing Quigley, Convention on Foreign Arbitration Awards, 58 A.B.A.J. 821, 822 (1972).

§§ 9, 13; Convention, Art. III. The award itself is inchoate until enforced by judgment. Under the Federal Arbitration Act, 9 U.S.C. §§ 9 to 11, the enforcement of an arbitration award is subject to certain limited defenses. That is true, as well, under the New York CPLR §§ 5304, 5305, and the Convention, Art. V. The United Nations Convention further provides that recognition and enforcement of an arbitral award may be refused if the competent authority in the country where recognition and enforcement is sought finds that the recognition or enforcement of the award is contrary to the public policy of the country. Art. V, 2(b).

We note at the outset that there is no reference to bankruptcy in the Convention. Nor is there any reference to whether the "public policy" of the forum state to require equal treatment of creditors in the case of bankruptcy is the kind of "public policy" that allows non-recognition of foreign arbitral awards. "The legislative history of the provision offers no certain guidelines to its construction." See Parsons & Whittemore Overseas Co., Inc. v. Societe General de L'Industrie Du Papier (Rakta), 508 F.2d 969, 973 (2 Cir. 1974).

■ The public policy in favor of international arbitration is strong. Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313 (2 Cir. 1973), cert. denied, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974). And we have recently indicated that the "public policy" limitation on the Convention is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice. Parsons & Whittemore, *supra*, 508 F.2d at 974.

As we shall see, this appeal can be decided without the necessity of determining whether the Bankruptcy Act involves a "public policy" which is contrary to enforcement of arbitral awards under the Convention.

The questions that arise on this appeal are: (1) Is a foreign arbitral award rendered after the filing of a Chapter XI petition in the United States Bankruptcy Court nevertheless a valid determination on the merits? (2) If it is, what is the domestic "competent authority" to consider the limited defenses against its enforcement, the District Court or the Bankruptcy Court?

■ We note at the outset that Judge Weinstein's holding with regard to the Bankruptcy Court's lack of personal jurisdiction over Copal is clearly correct and we affirm it without further elaboration. The Bankruptcy Court did not enjoy personal jurisdiction over Copal until October 22, 1970 when Copal's claim was filed, for Copal did not have the "minimum contacts" with the United States required under Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Therefore, its stay did not operate against Copal. See Restatement 2d, Foreign Relations Law of the United States § 7 (1965). Nor did the stay operate against Fotochrome, for it was directed only to creditors. Fotochrome was free, certainly with the permission of the Bankruptcy Court, which it never sought, to complete the arbitration in Japan. The sole effect of the stay for the purposes of this case was to induce Copal to file a claim in bankruptcy based directly on the arbitral award rather than to seek prior confirmation in an American court of general jurisdiction. We hold that it should not have proceeded in that manner.

■ There appears to be no specific statutory authority for a Bankruptcy Judge to stay a domestic arbitration proceeding, although we assume, arguendo, that he may do so. See 11 U.S.C. §§ 11a(15), 714; but see 1A Collier, On Bankruptcy ¶ 11.08 at 1149–50 (14th ed. 1974). But such stay cannot be effective, in any event, without *in personam* jurisdiction over the creditor who has begun an action in a foreign tribunal that is not within the jurisdiction of the United States. Nor can it be argued that the stay must have affected the arbitration

because of the Bankruptcy Court's jurisdiction over the debtor's assets. Even within the territorial jurisdiction of the United States, the jurisdiction of the Bankruptcy Court over matters affecting those assets is not necessarily exclusive. See Thompson v. Magnolia Co., 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940); 3 Collier, *supra*, ¶ 57.15[3.2] at 260.

■ Neither the Convention nor the arbitration statutes indicates what should be done in the event of the bankruptcy of one of the parties to an arbitration. Nor does the Bankruptcy Act reveal how a Bankruptcy Judge should handle an arbitration award filed as proof of claim under Section 63a(5) of the Bankruptcy Act, 11 U.S.C. § 103(a)(5). That section requires the Bankruptcy Court to accept as a final adjudication of a claim "provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge . . . ." But an arbitral award cannot be considered a "judgment" within the terms of the statute, for the process of procuring a judgment based on an arbitral award involves the due process right to contest the award on the limited statutory grounds permitted. Without such an opportunity to contest confirmation, it is hard to see how the award itself can be sufficient for a proof of claim in bankruptcy. Until its merger in a judgment, we do not think it is a provable debt under Section 63a(5) of the Bankruptcy Act.

■ It is nevertheless a binding adjudication on the merits. We conclude that a foreign arbitral award rendered after the filing of a Chapter XI petition in a United States Bankruptcy Court in an arbitration proceeding commenced prior to such filing is a valid determination on the merits and is unreviewable by the Bankruptcy Court.

A proceeding looking to an ultimate distribution of assets, or, we presume, an arrangement of the debtor under Chapter XI as well, has a twofold aspect, as Justice Brandeis noted in Riehle v. Margolies, 279 U.S. 218, 224–25, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929)—a) distribution of the property and b) determination of the amount of indebtedness to particular creditors. The latter function "is strictly a proceeding *in personam.*" Ibid. In *Riehle*, an *in personam* suit against the debtor, which had been commenced before the receivership, was allowed to continue to judgment in the state court without the participation of the receiver, the default judgment being accepted as an adjudication of the existence of the indebtedness. The Supreme Court noted further:

"The establishment of a claim constituting the basis of the right to participate in the distribution of property in the possession of one court is often conclusively determined by a judgment obtained in another court." 279 U.S. at 225, 49 S.Ct. at 313.

■ The analogy carries us to the point that a judgment obtained after a petition is filed and before discharge may in some circumstances be proved as a claim against the estate under Section 63a(5) of the Bankruptcy Act even though the receiver or trustee (or debtor in possession) did not participate in the suit resulting in the judgment. The analogy was carried forward to a Chapter X reorganization by this court in Doyle v. Nemerov's Executors, 223 F.2d 54 (2 Cir. 1955), where Judge Learned Hand observed "although the section [§ 11 of the Bankruptcy Act, 11 U.S.C. § 29] gave the bankruptcy court power before adjudication to enjoin suits, the petition did not stay them automatically." 223 F.2d at 56. In the case of this Chapter XI proceeding, the result is *a fortiori*, for the debtor in possession had actually participated in the Japanese arbitration, which began before the petition was filed.

■ The conclusion that we must enforce the award as a valid determination on the merits is mandated by the United Nations Convention, which provides in Article III:

"Each Contracting State shall recognize arbitral awards as binding and

enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards." 21 U.S.T. 2517, 2519, T.I.A.S. 6997 at 3, 330 U.N.T.S. 38, 40 (1970).

Under this Article, equal treatment of foreign awards is the minimum required of a Contracting State. Foreign awards are vulnerable to attack only on the grounds expressed in other articles of the Convention, particularly Article V. See 9 U.S.C. § 207; Quigley, Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale L.J. 1049, 1065–66 (1961).[4]

Under the Convention it seems quite clear that enforcement may be refused at the instance of the losing party only on proof of specified conditions, one of which is that "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings *or was otherwise unable to present his case.*" (Emphasis added.) Art. V, 1(b).

These provisions of the Convention are made effective by the statute which im-plements the Convention. 9 U.S.C. § 207 provides in part: "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

At this point we must, however, recognize another difficulty. We have recently held that if the arbitral award actually results in a judgment in the foreign country, it may be enforced as a foreign money judgment in the State of New York, regardless of the limiting provisions of the Convention and subject only to the non-enforcement provisions of Article 53 of the New York C.P.L.R. Island Territory of Curacao v. Solitron Devices, Inc., *supra.*

This raises the question whether the Japanese arbitration award has, *ipso facto*, the status of a judgment, in which event arguments against enforcement would be limited to those provided in Article 53 of the C.P.L.R. if enforcement is sought in the state courts of New York. If it is not equivalent to a judgment, enforcement is governed by the provisions of the Convention.

It is true that, in literal terms, as Judge Weinstein noted, Article 800 of the Japanese Code of Civil Procedure provides: "An [arbitral] award shall have the same effect as a judgment which is final and conclusive between the parties." The Judge stated that the Japanese award may be recognized pursuant to New York's statute on recognition of foreign country money judgments, C.P.L.R. §§ 5301–5309 (1970), cit-

---

**4.** The Japanese Treaty, a general treaty, is not quite as specific in its arbitration clause as the Convention. Article IV, ¶ 2 provides:

"Awards duly rendered pursuant to any . . . contracts [providing for arbitration of disputes], which are final and enforceable under the laws of the place where rendered, shall be deemed conclusive in enforcement proceedings brought before the courts of competent jurisdiction of either Party, and shall be entitled to be declared enforceable by such courts, except where found contrary to public policy." 4 U.S.T. 2063 at 2068, T.I.A.S. 2863 at 7.

To the extent that there may be a conflict between the Treaty and the Convention, we think that where both parties to a bilateral treaty, Japan and the United States, later become signatories to a multinational convention covering the same subject matter, the Convention is intended to control. We reach this conclusion despite the saving clause preserving the validity of bilateral agreements between the contracting states. Convention, Article VII. The adhesion of additional signatories does not affect the circumstance that each signatory, bound by bilateral agreement, is modifying its earlier engagement vis-a-vis the other, but only to the extent necessary. Furthermore, inasmuch as both agreements further the same purpose, the one tending to further that purpose most forcefully, the Convention, should be given effect.

ing the *Solitron* case, but also noted the provision for removal from state to federal court in actions relating to the Convention. 9 U.S.C. § 205. He carefully refrained from a definitive choice between state and federal courts, declaring that "Copal is now free to seek recognition of its award as an American judgment. Fotochrome may prove grounds for nonrecognition." We think that Judge Weinstein was right in concluding that the Japanese arbitral award may not itself be treated as a foreign money judgment.

Under the Convention, enforcement of an arbitral award may be refused at the instance of the losing party on proof of specified conditions. Art. VI, 1(b). There is, in addition, a requirement in Article III of the Convention, as we have seen, that each contracting state shall enforce arbitral awards in accordance with the rules of procedure of the territory where the award is relied upon. Since under our procedure the losing party may object to confirmation on limited grounds that are specified in the Convention, we cannot treat the Japanese arbitral award as equivalent to a final judgment barring such recourse by the losing party when enforcement is sought. We need not rely on theories of territorial jurisdiction to conclude that a foreign award can never be self-executing in the forum state but must be merged in a local judgment to be effective as a matter of domestic law. See Lorenzen, Commercial Arbitration—Enforcement of Foreign Awards, 45 Yale L.J. 39, 56 (1935). The Convention itself makes a distinction between recognition and enforcement of an arbitral award. And when grounds are specified for non-enforcement, such a provision necessarily implies a remedy for its assertion.

The award, on this analysis, is therefore not a judgment under Section 63a(5) of the Bankruptcy Act, 11 U.S.C. § 103a(5), and its filing as a proof of claim was premature. Copal must seek a judgment based on the award in a District Court of the United States under 9 U.S.C. § 207.[5] Fotochrome must, in turn, be given the right to assert the non-enforceability of the award under conditions specified in Article V of the Convention. The determination of the enforcement of the award is a matter not before us on this appeal.

The restraining order of the Bankruptcy Court must be vacated with respect to Copal to allow it to secure a judgment. Both the Supreme Court in Scherk v. Alberto-Culver Co., *supra,* and this court in *Solitron Devices, supra,* have stressed the need for encouraging international arbitration and for putting no roadblocks in its way.

It may, indeed, seem anomalous that a domestic contracting party might have been restrained from pursuing the arbitration remedy upon the filing of the petition herein, while a Japanese contracting party, similarly situated, may proceed to an arbitration award.

The result is not quite as anomalous as appears, however. For in a converse situation an American company might procure an arbitral award in the United States against a Japanese firm in financial trouble whose Japanese creditors

5. The question whether foreign arbitral awards will be enforceable in the United States courts has become a subject of only historical interest so far as nationals of countries signatory to the Convention are concerned, for 9 U.S.C. § 207 gives federal jurisdiction for the enforcement of such awards, implementing the Convention.

Before the Convention, although an arbitral award rendered in another state of the Union was entitled to full faith and credit, Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908), that obviously did not, in terms, apply to awards made in foreign countries. See generally, Von Mehren and Trautman,

Recognition of Foreign Adjudications, 81 Harv. L.Rev. 1601, 1606 (1968); Restatement 2d, Conflict of Laws § 98, Comment b (1971). Only one state had a statute providing for the enforcement of foreign arbitral awards, see Domke, The Law and Practice of Commercial Arbitration 361 n.1 (1968), and, curiously, the Federal Arbitration Act, though it embraces foreign commerce, makes no provision for the enforcement of foreign arbitral awards under the Act unless the parties, by agreement, have specified a court in which an order confirming the award may be made. See 9 U.S.C. § 9. That is now largely covered by Sections 203 and 207 of Title 9.

might be under a stay from a Japanese court.

We are not concerned here with a case where the Japanese firm seeking arbitration in Japan is also doing business here and is subject to an *in personam* restraint by a United States Bankruptcy Court from proceeding against its contracting party whose assets are under the exclusive jurisdiction of the Federal Bankruptcy Court. That situation we leave for another day.

The order of the District Court reversing the order of the Bankruptcy Judge is affirmed. Appellee may seek confirmation of its arbitral award by judgment in the United States District Court under 9 U.S.C. § 207, and, if successful, may thereafter file a proof of claim in the Chapter XI proceeding based upon the judgment so obtained.