In re **SPRINGER–PENGUIN, INC., Debtor.**

**Bankruptcy No. 87 B 20103.**

United States Bankruptcy Court, S.D. New York.

June 10, 1987.

Schnader, Harrison, Segal & Lewis, New York City, for Jugoexport-Beogradt; Nicholas J. LePore III, of counsel.

Certilman Haft Lebow Balin Buckley & Kremer, New York City, for debtor; Martin F. Brecker, and Michael L. Shor, of counsel.

Reich and Reich, White Plains, for Creditors' Committee; Sidney H. Reich, of counsel.

## DECISION ON MOTION UNDER 11 U.S. C. § 105(a) TO STAY ARBITRATION IN YUGOSLAVIA

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This Chapter 11 debtor, Springer-Penguin, Inc., lost the benefit of the automatic stay in accordance with 11 U.S.C. § 362(e) when it stipulated to adjourn a hearing for relief from the stay beyond thirty days from the request for such relief, without obtaining a consent from its adversary, or an order from the court, that the automatic stay would continue until the adjourned hearing. Accordingly, the debtor now seeks to obtain a stay pursuant to 11 U.S.C. § 105(a) in order to enjoin an arbitration proceeding commenced by the respondent, Jugoexport-Beograd, at the Yugoslav Chamber of Commerce in Belgrade, Yugoslavia.

### FACTS

1. On March 12, 1987, the debtor, Springer-Penguin, Inc., filed with this court a voluntary petition for reorganizational relief pursuant to Chapter 11 of the Bankruptcy Code and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. § 1108.

2. The debtor is a corporation organized and existing under the laws of the State of New York. It is engaged in the manufacture and distribution of office furniture products and refrigerators.

3. The respondent, Jugoexport-Beograd, ("Jugo") is a legal entity formed and existing under the laws of Yugoslavia, with its principal place of business located in Beograd, Yugoslavia. Jugo sells office products, such as conference tables and shelves, for export throughout the world.

4. During the period from 1983 to 1986, Jugo and the debtor entered into written contracts for the manufacture and delivery by Jugo and the purchase by the debtor of bookcases, shelves and filing cabinets according to specifications provided by the debtor. The contracts also called for the purchase by Jugo from the debtor of American walnut and oak veneer to be used in the manufacture of the bookcases.

5. Jugo's sales of office products to the debtor were made pursuant to contracts which contained an arbitration clause requiring that disputes between the parties be submitted to Foreign Trade Arbitration at the Yugoslav Chamber of Commerce.

6. During the period between 1983 and 1986 disputes developed between the parties. Jugo claims that the debtor defaulted in paying for delivered merchandise. The debtor does not dispute the fact that it owes money to Jugo for the purchase of merchandise, but asserts that there exist offsets because of Jugo's alleged failure to ship products of merchantable quality.

7. On June 30, 1986, the debtor commenced an action against Jugo in the Supreme Court of the State of New York, Westchester County, seeking damages in excess of $3,000,000 for breach of contract and breach of warranty. The debtor served the summons and complaint at the office of Yugoexport Corp. ("Yugo"), a New York subsidiary of Jugo.

8. On July 18, 1986, Jugo removed the state court action to the United States Dis-

trict Court for the Southern District of New York pursuant to 28 U.S.C. § 1446.

9. On August 21, 1986, the respondent, Jugo, filed a claim against the debtor in the Foreign Trade Arbitration of the Yugoslav Chamber of Commerce, based upon the arbitration clause in each contract involving Jugo's sale of furniture products to the debtor. In the arbitration, Jugo sought to recover $1,800,000 for furniture allegedly sold and delivered by Jugo to the debtor under the same contracts which were at issue in the debtor's District Court action.

10. On September 16, 1986, Jugo petitioned the District Court to stay the action in the District Court pending arbitration of the disputes between the parties in the Foreign Trade Arbitration of the Yugoslav Chamber of Commerce. The debtor sought to amend its complaint in the District Court, without leave, in order to add Jugo's New York subsidiary, Yugoexport, Inc. as another party defendant.

11. In an opinion dated December 3, 1986, District Court Judge Peter K. Leisure ruled that the debtor's amended complaint should be stricken and that the debtor was not entitled to join Yugo without leave of the court. Judge Leisure also ruled as follows:

> Thus, the parties now agree, and it is so ordered, that [the debtor's] action against Jugo shall be stayed pending arbitration, that there shall be no remand of [the debtor's] claims, and that [the debtor's] action against Yugo shall not go forward in this forum.

12. Following the debtor's commencement of its Chapter 11 case on March 12, 1987, Jugo filed with this court on April 28, 1987, a motion requesting modification of the automatic stay in order to continue the Foreign Trade Arbitration in Belgrade, Yugoslavia. The parties adjourned the hearing to June 5, 1987, without agreeing to a continuation of the stay until the adjourned date, or without obtaining an order from the court to that effect. Therefore, pursuant to the mandate contained in 11 U.S.C. § 362(e), the automatic stay terminated thirty days after the request for relief, which was prior to the adjourned hearing date of June 5, 1987. Hence, the debtor now seeks a stay pursuant to the authority conferred upon this court under 11 U.S.C. § 105(a).

## DISCUSSION

Had there been no Chapter 11 case commenced after the District Court's decision which enforced Jugo's right to proceed in the foreign arbitration, there would be no question that the arbitration provision in the contracts between the parties would be given effect. The strong public policy favoring international arbitration would be persuasive. *Waterside Ocean Navigation Co., Inc. v. International Navigation, Ltd.*, 737 F.2d 150 (2d Cir.1984); *Fotochrome, Inc. v. Copal Company, Limited,* 517 F.2d 512 (2d Cir.1975). The failure to enforce foreign arbitration clauses agreed to by the parties would simply encourage unseemly forum shopping and would be inimical to the stability of international agreements. This point was noted by the Supreme Court in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

> A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved.
>
> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages.

417 U.S. at 516–517, 94 S.Ct. at 2455–56 (f.n. omitted).

Article II, Section 1 of the Convention on Recognition and Enforcement of Foreign Arbital Awards, which was adopted and

882

codified by the United States in 1970, pursuant to 9 U.S.C. §§ 201, *et seq.,* requires the United States to:

> ... recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

Moreover, Article II, Section 3 of the Convention requires the courts to refer contracting parties to arbitration, and states:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

The Supreme Court recently expressed its approval of arbitration as an alternative to court litigation, holding that arbitration agreements in brokerage contracts could be enforceable in fraud suits under section 10(b) of the Securities Exchange Act and under the RICO Act. *Shearson/American Express v. McMahon,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

The question for determination in this case, however, is whether the policy of favoring foreign arbitration when agreed to by the parties must give way to the equally strong federal policy which favors the prompt, fair and efficient administration of ailing businesses through the procedures applicable under the Bankruptcy Code. Thus, the issue is not whether under normal circumstances the foreign arbitration clause is enforceable, because it is, but whether the intervention of a case under the Bankruptcy Code modifies the obligations of the parties so that all claims against a debtor in a title 11 case should be determined under the *aegis* of the Bankruptcy Court, notwithstanding foreign arbitration clauses.

## ABSTENTION

■ Some of the arguments advanced by the respondent appear to be addressed more to the issue of abstention than injunction. The respondent contends that the interests of judicial economy and efficiency will be best served by permitting the foreign arbitration to proceed because where an alternative forum offers some advantage, the action should be permitted to proceed outside the Bankruptcy Court.

Mandatory abstention in bankruptcy cases is governed by 28 U.S.C. § 1334(c)(2). This subsection clearly does not apply because pursuant to 28 U.S.C. § 157(b)(2)(B) and (C) the allowances of claims filed by creditors and the determinations of counterclaims by debtors are classified as core matters and not related matters as required under subsection (c)(2). *Lombard-Wall, Inc. v. New York City Housing Development Corp., (In re Lombard-Wall, Inc.),* 44 B.R. 928 (Bankr.S.D.N.Y.1984) *aff'd as modified* 48 B.R. 986 (S.D.N.Y. 1985). Moreover, the action between the parties could have been commenced in a District Court, and in fact, the debtor's state court case had been removed to the District Court by the respondent.

Similarly, discretionary abstention, as expressed in 28 U.S.C. § 1334(c)(1) does not apply. This subsection refers to abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law ...". There is no state court involved in this case and the Constitutional concept of full faith and credit that must be accorded State court judgments is not implicated when dealing with an arbitration proceeding to be held in Yugoslavia. Accordingly, the court must address the issue of injunction and not abstention.

## RES JUDICATA AND COLLATERAL ESTOPPEL

■ Jugo reasons that the opinion and order entered by District Court Judge Leisure directing that the debtor's District Court action against Jugo should be stayed pending arbitration conclusively compels a denial of the debtor's instant application for a stay. This position is premised on the

principles of *res judicata* and collateral estoppel. In *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1945), which Jugo cites for this proposition, the Supreme Court said:

> In general a judgment is res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which *could have been* but were not raised and litigated in the suit.

(Emphasis added). 327 U.S. at 735, 66 S.Ct. at 857. The principle of *res judicata*, prevents relitigation of claims and defenses available to the parties in a prior suit. *See* Restatement (Second) of Judgments § 24 (1982). Manifestly, the issue as to the exclusivity of the court's bankruptcy jurisdiction to determine all claims against the debtor, as expressed in 28 U.S.C. § 1334(a), could not have been raised before Judge Leisure because the Chapter 11 case had not yet been commenced. Thus the determination that Jugo's claim against the debtor should proceed to arbitration in Yugoslavia is not *res judicata* as to that issue in the Bankruptcy Court.

The principle of collateral estoppel, or issue preclusion, which Jugo also invokes, prevents the parties from relitigating those issues which were "actually and necessarily determined by a court of competent jurisdiction ...". *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). This principle has also been expressed as follows:

> When an issue of fact or law is actually litigated and determined by valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982).

▪ In the instant case, the parties did not previously litigate the issue as to whether or not the intervention of the exclusivity provision regarding the determination of all claims against a debtor in a bankruptcy case should require the enjoining of a foreign arbitration proceeding commenced by Jugo for the purposes of asserting a claim against this debtor. Hence, collateral estoppel is no defense to the debtor's request for injunctive relief.

## INJUNCTIVE RELIEF

The arbitration proceeding commenced by Jugo in Yugoslavia has not gotten under way; no arbitrators have been selected and no hearings held. Thus, the posture of this case differs from the situation in *Fotochrome, Inc. v. Copal Company, Limited*, 517 F.2d 512 (2d Cir.1975) where a foreign arbitration proceeding was commenced before the filing of a Chapter XI petition under the former Bankruptcy Act, but the arbitration award was rendered during the continuation of the Chapter XI case. The Bankruptcy Court had ruled that the arbitration award rendered after the commencement of the case was not binding. Both the District Court and the Second Circuit Court of Appeals ruled that a Bankruptcy Court does not have the power in a Chapter XI arrangement to relitigate the merits of a contract dispute which had been resolved by binding arbitration in a foreign forum, commenced before the filing of the Chapter XI petition and concluded thereafter by an arbitral award. The question as to whether or not the Bankruptcy Court should have restrained the continuation of the foreign arbitration proceeding was not at issue.

In *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3rd Cir.1983), *cert. denied*, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), the court was confronted with the strong federal policy favoring arbitration, as reflected in the United States Arbitration Act, 9 U.S.C. §§ 1–208, and the competing policy to the effect that Bankruptcy Courts should have exclusive jurisdiction to determine claims against bankruptcy estates. In that case the trustee in bankruptcy sought to recover liquidated damages under a contract which contained an arbitration clause. The defendant's request to stay the bankruptcy proceeding pending arbitration was denied. The Court of Appeals for the Third Circuit concluded that the Bankruptcy Reform Act

of 1978 impliedly modified the United States Arbitration Act, and said:

> Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction. *See* 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court.

712 F.2d at 59–60.

■ In determining whether or not to exercise its discretion to stay an adversary proceeding pending arbitration, some of the factors considered by the courts include; (1) the degree to which the nature and extent of the litigation and evidence makes the judicial forum preferable to arbitration; (2) the extent to which special expertise is necessary to resolve the disputes and (3) the identity of the persons comprising the arbitration committee and their track record in resolving disputes between the parties. *Double TRL, Inc. v. F.S. Leasing, Inc., (In re Double TRL, Inc.)* 65 B.R. 993, 998 (Bankr.E.D.N.Y.1986). The fact that a trustee in bankruptcy and the creditors of the estate had not consented to the contract containing the arbitration clause were also important factors in persuading a Bankruptcy Court that the debtor should not be required to submit to a foreign arbitration proceeding. *Braniff Airways, Inc. v. United Air Lines, Inc., (In re Braniff Airways, Inc.)*, 33 B.R. 33 (Bankr.N.D.Tex.1983). Another factor to be considered

in determining whether or not a court should favor the determination of claims against a debtor in a bankruptcy case is the need "to guard against forcing American parties to participate in foreign proceedings in which their claims will be treated in some manner inimical to this country's policy of equality". *Banque de Financement, S.A. v. The First National Bank of Boston*, 568 F.2d 911, 921 (2d Cir.1977). Generally, bankruptcy jurisdiction is favored rather than allowing claims against a debtor to be determined in arbitration proceedings, even when the bankruptcy case is in a foreign country and the arbitration proceeding is pending in this country, because a bankruptcy case—

> enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.

*Cunard Steamship Company, Limited v. Salen Reefer Services AB*, 773 F.2d 452, 458 (2d Cir.1985).

Although the automatic stay has terminated, a bankruptcy court may issue a new injunctive order because 11 U.S.C. § 105(a) invests the court with broad equitable powers to protect its jurisdiction and the property of the estate from any interference with the administration of the debtor's estate under the *aegis* of the court. *Browning v. Navarro*, 743 F.2d 1069, 1084 (5th Cir.1984), *reh. denied* 747 F.2d 1465 (5th Cir.1984); *Explorer Drilling Company, Inc. v. Martin Exploration Company (In re Martin Exploration Company)*, 731 F.2d 1210, 1214 (5th Cir.1984).

■ In the instant case, the debtor's counterclaim for damages will require the attendance of customers in this county to whom the debtor resold the imported furniture products, whereas the respondent's evidence as to the quantities sold to the debtor and the amounts due will be relatively easy to establish. No special expertise on the part of the arbitrators is required to resolve the claims between the parties. The dispute can be determined expeditiously in the bankruptcy court, where the credi-

tors' interests in this estate can be protected.

In light of the foregoing factors, and the strong federal policy, as reflected in 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(b)(2)(B), that claims against a debtor should be determined in the context of the district court's exclusive jurisdiction of bankruptcy cases, as referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a), Jugo should be enjoined from asserting its claim against the debtor in the arbitration proceeding in Yugoslavia. Therefore, the debtor's motion under 11 U.S.C. § 105(a) for an order staying Jugo from proceeding in the arbitration proceeding in Yugoslavia is granted.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (C).

2. The opinion and order entered by District Court Judge Peter K. Leisure directing that the District Court action commenced by the debtor against Jugo should be stayed pending arbitration in Yugoslavia is not *res judicata* and does not collaterally estop the debtor after the commencement of its Chapter 11 case, from seeking to enjoin Jugo from resolving its claim against the debtor in the foreign arbitration proceeding.

3. In the interests of justice, and in furtherance of the concept of equality of distribution that applies in bankruptcy cases and based upon the factors considered in favor of resolving all claims against the debtor in the context of this bankruptcy case, the court will exercise the discretion authorized under 11 U.S.C. § 105(a) and will enjoin Jugo from pursuing its claims against the debtor in the arbitration proceeding in Yugoslavia.

4. The debtor's motion pursuant to 11 U.S.C. § 105(a) enjoining Jugo from continuing the assertion of its claims against the debtor in the arbitration proceeding in Yugoslavia, is granted.

SETTLE ORDER on notice.