**EUROPCAR ITALIA, S.p.A.,**
**Plaintiff–Appellee,**

v.

**MAIELLANO TOURS, INC.,**
**Defendant–Appellant.**

**Docket No. 97–7224.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 24, 1997.

Decided Sept. 2, 1998.

Thomas V. Dana, New York City, for Defendant–Appellant.

John P. Perfetti, New York City, for Plaintiff–Appellee.

Before: OAKES and WALKER, Circuit Judges, and BRIEANT,* District Judge.

JOHN M. WALKER, Jr., Circuit Judge:

Defendant-appellant Maiellano Tours, Inc. ("Maiellano") appeals from the January 21, 1997, judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, Judge) granting plaintiff-appellee Europcar Italia S.p.A.'s ("Europcar") motion for summary judgment on its action for the enforcement of a foreign arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, implemented by 9 U.S.C. § 201 et seq. (the "Convention").

In October 1988, the parties entered into an agreement (the "1988 agreement") whereby Europcar, an Italian car rental business, agreed to provide rental car services in Italy to customers sent to it by Maiellano, an American travel agency. The 1988 agreement contained an arbitration clause providing that the agreement would be governed by Italian law and that

[a]ny dispute arising from or in connection with this agreement, included [sic] those related to its validity, performance or termination will be submitted to and finally resolved by a sole arbitrator appointed by the legal counsels selected by the parties. The sole arbitrator shall decide under the rules known in the Italian legal system as 'arbitrato irrituale in equita' (informal proceedings).

A dispute arose in 1991 as to which party was entitled to certain value-added-tax refunds that had been remitted by the Italian tax authority to Maiellano. Unable to agree on a sole arbitrator as required by the 1988 agreement, the parties entered into a supplemental arbitration agreement, which provided in relevant part:

[t]he agreement between Maiellano Tours, Inc. and Europcar Italia S.p.A. is regulated by Italian law.

In the event that any dispute shall arise with respect to the application of this agreement, including its validity, execution or resolution, it shall be settled by a final arbitration by an Arbitration Panel of three arbitrators, as amicable adjusters, appointed as follows: each part [sic] will appoint an arbitrator, and the third arbitrator, who will act as President of the Panel will be mutually appointed by the two arbitrators so appointed. . . .

The Panel will decide the controversy pursuant to the rules set forth in the Italian legal system for the "Arbitrato Irrituale in Equità (procedimento informale)", (Informal arbitration on equitable grounds).

Thus, as in the 1988 agreement, the procedure to be used was "arbitrato irrituale" and the arbitration panel's decision was to be a "final arbitration." Following written submissions and hearings, the selected panel issued an award in favor of Europcar in June of 1992.

In July 1992, Europcar commenced an action in the Italian courts to confirm the arbitration award and to obtain an order of payment. Maiellano countered by commencing a collateral action to have the award set aside on the ground of fraud, alleging that the arbitrator's decision was based on a February 20, 1979, agreement (the "1979 agreement") that contained a forged Maiellano signature.

The Tribunal of Rome consolidated the actions and by a decision dated March 30, 1996, ruled in favor of Europcar and rejected all of Maiellano's claims. The tribunal found that Maiellano had not raised the issue of forgery to the arbitrators and that the arbitrators' decision was based principally on the parties' ten-year business relationship rather than on any particular written agreement. Maiellano appealed the Tribunal of Rome's confirmation of the arbitral award to the Roman Court of Appeals.

---

* The Honorable Charles L. Brieant, of the United States District Court for the Southern District of New York, sitting by designation.

On August 4, 1994, while the above litigation was underway in the Italian courts, but before the outcome of the proceedings in the Tribunal of Rome, Europcar filed an action in the Eastern District of New York seeking recognition and enforcement of the arbitral award pursuant to the Convention and 9 U.S.C. § 207. Maiellano opposed enforcement, arguing, inter alia, that the district court lacked subject matter jurisdiction because arbitrato irrituale is not covered by the Convention and, in the alternative, that the district court should defer its decision pending the outcome of the trial of the Tribunal of Rome in accordance with *Spier v. Calzaturificio Tecnica S.p.A.*, 663 F.Supp. 871 (S.D.N.Y.1987).

Europcar moved for summary judgment in October of 1994, and the district court referred the motion to Magistrate Judge Gold. Judge Gold rejected Maiellano's arguments and recommended that Europcar's motion for summary judgment be granted. Apart from one modification not relevant here, Judge Amon adopted Judge Gold's Report and Recommendation in its entirety and entered judgment for Europcar in the amount of $1,102,283 with interest and costs. This appeal followed.

## DISCUSSION

The Convention provides for the enforcement of arbitration agreements and the confirmation of foreign arbitral awards. Convention, arts. II, III. District courts have been given original jurisdiction over actions or proceedings falling under the Convention, 9 U.S.C. § 203, and any party to a foreign arbitration may seek confirmation in a district court of an arbitral award within three years after the award is made, 9 U.S.C. § 207. "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the ... Convention." *Id.* The grounds for refusing to enforce an award are limited to the specific defenses enumerated in Article V of the Convention, which provides in relevant part:

1. Recognition and enforcement of the award may be refused ... only if [the] party [requesting refusal] furnishes ... proof that:

. . . .

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

. . . .

(b) The recognition or enforcement of the award would be contrary to the public policy of [the] country [in which enforcement is sought].

█ The party opposing enforcement has the burden of proving the existence of one of these enumerated defenses. See *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 518 (2d Cir.1975); *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir.1974).

On appeal, Maiellano argues, inter alia, that (1) the district court did not have jurisdiction under the Convention to confirm an award granted under arbitrato irrituale; (2) the award should not have been enforced because the parties did not intend to be bound by the arbitration award; (3) the district court should have refused to enforce the award because it was based on a forged contract and, therefore, is contrary to United States public policy; and, in any event, (4) the district court should have suspended its decision to await the outcome of the pending Italian litigation.

### A. Enforceability of arbitrato irrituale Award

Maiellano contends that awards granted under the Italian rules known as arbitrato irrituale do not give rise to a binding arbitral award of the sort entitled to enforcement under the Convention because arbitrato irrituale is an informal, extralegal process that lacks procedural safeguards. Moreover, confirmation of the award here would give it

greater legal status than it would be accorded in Italy because under Italian law such arbitral awards are considered to be contractual agreements that are not automatically enforceable, but rather are subject to de novo review by an Italian court. Therefore, Maiellano contends, it would be inappropriate to confirm such awards through the summary proceeding and deferential enforcement envisioned by the Convention. Maiellano supports these arguments with a decision by Germany's highest court, the Bundergerichtshof, that held that awards rendered under arbitrato irrituale were not enforceable under the Convention, see Compania Italiana di Assicurazioni v. Schwartzmeer und Ostsee Versicherungsaktien-gesellschaft, BGHZ, Oct. 8, 1981 (IIIZR 42/80), reprinted in [1982] CEC (CCH) 516, as well as opinions of academicians, including one of the draftsmen of the Convention, that state that the Convention was not meant to apply to arbitrato irrituale, see, e.g., Decl. of Hans Smit, Nov. 12, 1996, J.A. at 456; *Spier*, 663 F.Supp. at 874 (quoting declaration of Pieter Sanders, a draftsman of the Convention); Pieter Sanders and Dr. Albert Jan van den Berg, Consolidated Commentary, IV Yearbook Commercial Arbitration 231, 232–33 (1979).

Europcar, on the other hand, points to four decisions of the Italian Supreme Court, the Corte de Cassazione, that have expressly held that arbitrato irrituale does fall under the Convention. See Agracommerz A.G. v. Privilegiata Fabbrica Maraschino Excelsior Girolamo Luxardo S.p.A., Cass., 15 Jan. 1992, n. 405; Federal Commerce and Navigation Ltd. v. Rocco Giuseppe e Figli s.n.c., Cass., sez. un., 15 Dec. 1982, n. 6915, Foro. It. 1983, I, 2200; Carey Hirsch Lumber Co. v. Colella Legnami S.p.A., Cass., sez. un., 6 July 1982, n. 4039, Foro It.1983, I, 736–40; Butera v. Pagnan, Cass., sez. un., 18 Sept. 1978, n. 4167. The Corte di Cassazione recognized that such awards would be treated differently under the Convention than under Italian law. Nevertheless, it held that in order to be enforceable under the Convention, awards must only be binding on the parties, not necessarily judicially binding in the originating country, and that although awards under arbitrato irrituale are merely contractual, and therefore are not immediately enforce-

able in Italy, they are nevertheless binding on the parties. See, e.g., Butera, n. 4167; Colella Legnami S.p.A., n. 4039. See also Giorgio Bernini, Domestic and International Arbitration in Italy after the Legislative Reform, 5 Pace L.Rev. 543, 544 (1985) ("[t]he arbitral award stemming from an arbitrato irrituale is binding upon the parties but has no executory force") [Hereinafter Bernini, *Italian Arbitration*]; Susan Choi, Note, Judicial Enforcement of Arbitration Awards under the ICSID and New York Conventions, 28 N.Y.U. J. Int'l L. & Pol. 175, 195–96 (Fall 1995—Winter 1996) (discussing arbitrato irrituale and noting that, according to Italian case law and authorities, awards are "binding" within meaning of Convention) [hereinafter Choi, *Judicial Enforcement*]. The Corte di Cassazione concluded that in light of the differences in arbitration among the signatory countries, the Convention should be read broadly to cover both formal and informal arbitration. See, e.g., Collela Legnami, n. 4039; Butera, n. 4167.

Whether or not the Convention applies to arbitrato irrituale is, as far as we can tell, a matter of first impression for any United States federal court. Indeed, apart from the above-cited cases in Germany and Italy, the matter apparently has yet to be ruled on by the Permanent Court of International Justice at the Hague or the courts of any other signatory countries. The only other federal court to be presented with the issue declined to resolve the matter and instead adjourned the proceedings to await the outcome of parallel proceedings in Italy. See *Spier*, 663 F.Supp. at 876. The district court below found the Italian cases persuasive and held that awards under arbitrato irrituale are enforceable under the Convention.

As the district court observed in Spier, the issue of whether or not arbitrato irrituale is enforceable under the Convention presents a close question and there are compelling arguments on both sides. Because resolution of this issue is not necessary to the disposition of this case, however, we leave decision on the matter for another day.

## B. Parties' Intent to be Bound

Maiellano next argues that the parties did not intend to be legally bound by the

arbitral award, but only to have it serve as a "contractual advisory". The district court properly rejected this argument. As the district court noted, both arbitration agreements stated unambiguously that the arbitration was to finally resolve the dispute and the arbitrators found that the parties intended to be bound by their award. Absent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings. See *Fotochrome*, 517 F.2d at 516–18; *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F.Supp. 638, 640 (S.D.N.Y.1990); *International Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial*, 745 F.Supp. 172, 181 (S.D.N.Y.1990). Moreover, as discussed above, awards under *arbitrato irrituale* are contractually binding on the parties even if they are not automatically enforceable. See, e.g., *Butera*, n. 4167; *Colella Legnami S.p.A.*, n. 4039. See also *Bernini, Italian Arbitration, supra*, at 544; *Choi, Judicial Enforcement, supra*, at 195–96; cf. Michael H. Strub, Jr., Note, Resisting Enforcement of Foreign Arbitral Awards Under Article V(1)(E) and Article VI of the New York Convention: A Proposal for Effective Guidelines, 68 Tex. L.Rev. 1031, 1058 (April 1990) (arguing that parties should state explicitly their intention not to be bound and that words such as "final" in arbitration agreement indicate intent to be bound) [hereinafter Strub, *Resisting Enforcement*]. Accordingly, the district court did not err in determining that the arbitration award at issue was binding upon the parties under the Convention.

## C. Alleged Forgery of Agreement

 Maiellano also argues that the award was based on the allegedly forged 1979 agreement and therefore enforcement would be contrary to United States public policy. The Convention provides that a federal court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article V(2)(B) of the Convention allows a court to refuse enforcement where to do so would violate the public policy of the enforcing state. However, this public policy exception is to be construed very nar-

rowly and should be applied "only where enforcement would violate our 'most basic notions of morality and justice.' " *Waterside Ocean Navigation Co. v. International Navigation Ltd.*, 737 F.2d 150, 152 (2d Cir.1984) (quoting *Fotochrome*, 517 F.2d at 516); see also *Parsons & Whittemore*, 508 F.2d at 974. No such public policy concerns are implicated in this case.

 Maiellano has apparently confused the issue of a fraudulently obtained arbitration agreement or award, which might violate public policy and therefore preclude enforcement, see *Waterside Ocean*, 737 F.2d at 153; *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C.Cir.1981), with the issue of whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced—a matter to be determined exclusively by the arbitrators. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992); *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1316 n. 2, 1319 (2d Cir.1973); *Meadows Indem. Co. v. Baccala & Shoop Ins. Services, Inc.*, 760 F.Supp. 1036, 1041 (E.D.N.Y.1991). Indeed, the supplemental arbitration agreement at issue here, whose validity Maiellano does not dispute, incorporates this rule of law by expressly providing that "any dispute [arising] with respect to the application of [the 1988] agreement, including its validity, execution or resolution, ... shall be settled by a final arbitration by an Arbitration Panel." (emphasis added). Thus, if Maiellano failed to raise the issue of the forged 1979 agreement to the arbitrators, the issue is forfeited. See *National Wrecking Co. v. International Bhd. of Teamsters*, Local 731, 990 F.2d 957, 960 (7th Cir.1993) (issues not raised before arbitrator are waived in enforcement proceeding). And if Maiellano did raise the issue to the arbitrators, it cannot seek to relitigate the matter here. See *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120–21 (2d Cir. 1991); *Fotochrome*, 517 F.2d at 512, 517–18; *Halley Optical*, 752 F.Supp. at 640; *Bridas Sociedad*, 745 F.Supp. at 181. It is also significant that the Italian Tribunal, in con-

firming the arbitration award, determined that the arbitrators had based their decision primarily on the ten-year business relationship that had existed between the parties, and that the allegedly forged 1979 agreement had only a minor influence on their decision. Furthermore, even if the arbitrators erroneously determined that the 1979 agreement was valid, an arbitration award cannot be avoided solely on the ground that the arbitrator may have made an error of law or fact. See *National Wrecking*, 990 F.2d at 960; *Hewlett–Packard, Inc. v. Berg*, 867 F.Supp. 1126, 1130–32 (D.Mass.1994) (same rule for foreign arbitration awards under the Convention), vacated and remanded on other grounds, 61 F.3d 101 (1st Cir.1995). Thus, we agree with the district court that enforcement of the arbitration award would not violate public policy.

### D. District Court's Decision not to Adjourn Proceedings

A court has discretion to adjourn enforcement proceedings where an application has been made in the originating country to have the arbitral award set aside or suspended. Article VI of the Convention provides

> If an application for the setting aside or suspension of the award has been made to a competent authority [of the country in which, or under the law of which, that award was made], the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

Maiellano urges that proceedings in the district court should have been adjourned or suspended until his appeal in Italy was decided. The district court denied Maiellano's application to adjourn the enforcement proceedings, finding that the confirmed award was immediately enforceable under Italian law notwithstanding the pending appeal and that the defendant had not sought a stay of enforcement in the Italian courts, and concluding that adjournment would thwart arbitration's twin goals of "settling disputes

efficiently and avoiding long and expensive litigation." See *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993).

The circumstances under which a district court should adjourn enforcement proceedings to await the outcome of parallel proceedings in the originating forum have received little attention from circuit courts. See *Spier*, 663 F.Supp. at 874; Strub, *Resisting Enforcement, supra*, at 1053. As a preliminary matter, no circuit court has enunciated the standard for reviewing a district court's refusal to adjourn. Only one appellate case appears to have addressed the issue. See *Hewlett–Packard Co., Inc. v. Berg*, 61 F.3d 101 (1st Cir.1995). In Berg, the district court had held that it lacked the power to adjourn proceedings pending a second arbitration. On appeal, the First Circuit determined that the Convention did not curtail the ordinary rule that a district court retains discretion to stay proceedings due to the pendency of a related proceeding in another tribunal. *Id.* at 105. The court then remanded for reconsideration, noting that "[w]hether confirmation ... should be partially deferred pending the resolution of the [second] arbitration is a matter for the district court to determine in the first instance." *Id.* at 106. Several district courts have interpreted the Convention to grant a district court "unfettered discretion" to decide whether or not to adjourn the proceedings. *Ukrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc.*, No. 95 Civ. 10278, 1996 WL 107285, at *6 (S.D.N.Y. Mar.12, 1996); see *Spier*, 663 F.Supp. at 874–75; *Fertilizer Corp. of India v. IDI Management, Inc.*, 517 F.Supp. 948, 961 (S.D.Ohio 1981).

■ We agree with *Berg*, 61 F.3d at 106, that adjournment should be decided by the district court in the first instance. We also conclude that in light of the permissive language of Article VI of the Convention and a district court's general discretion in managing its own caseload and suspense docket, see *Clinton v. Jones*, 520 U.S. 681, ——, 117 S.Ct. 1636, 1639, 137 L.Ed.2d 945 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); see also *Berg*, 61

F.3d at 105, the proper standard for reviewing a district court's decision whether to adjourn is for abuse of discretion.

The issue of whether or not to adjourn under Article VI of the Convention is a relatively undeveloped area of the law. Few courts of appeals have spoken on the issue, and district courts have resolved it in divergent ways. See, e.g., Berg, 61 F.3d at 104–06; Ukrvneshprom, 1996 WL 107285, at *6–*8; Spier, 663 F.Supp. at 874–75; Fertilizer Corp., 517 F.Supp. at 961–62. Guidance as to when it is appropriate to stay enforcement of an award under the Convention is virtually non-existent. See generally Strub, Resisting Enforcement, supra, at 1053 (discussing absence of standards for when district courts should stay proceedings).

It is plain to us, however, that a district court faced with a decision whether to adjourn arbitral enforcement proceedings to await the outcome of foreign proceedings must take into account the inherent tension between competing concerns. On the one hand, the adjournment of enforcement proceedings impedes the goals of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation. Under the law of many countries, an arbitration award is final, binding, and enforceable even if subject to further appeal in court. See Fertilizer Corp., 517 F.Supp. at 955–58, 961–63 (reviewing cases). A stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration. See Berg, 61 F.3d at 106; Fertilizer Corp., 517 F.Supp. at 961–62.

On the other hand, certain considerations favor granting a stay. One of the grounds for refusing to enforce an award under Article V(1)(e) is if the award "has been set aside or suspended by a competent authority of the country in which ... the award was made." Thus, where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings. Moreover, where, as here, it is the plaintiff who first sought to enforce his award in the originating country, the argument for enforcement by the plaintiff in the district court loses force because the possibility of conflicting results and the consequent offense to international comity can be laid at the plaintiff's door. See also Fertilizer Corp., 517 F.Supp. at 962; cf. Sumitomo Corp. v. Parakopi Compania Maritima, S.A., 477 F.Supp. 737, 741–42 (S.D.N.Y.1979) (finding that comity concerns did not require stay of action to compel arbitration under the Convention where court in related proceeding in Greece had not yet taken action on the merits), aff'd, 620 F.2d 286 (2d Cir.1980).

The limited scope of review allowed under the Convention also favors deference to proceedings in the originating country that involve less deferential standards of review on the premise that, under these circumstances, a foreign court well-versed in its own law is better suited to determine the validity of the award. Cf. Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir.1987) (" '[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.' " (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.1984))); Barbier v. Shearson Lehman Hutton, Inc., 752 F.Supp. 151, 159 (S.D.N.Y.1990).

■ In the instant case, it is plain that the district court's decision not to adjourn was based on the general objectives underlying the arbitration of disputes. However, it does not appear to us that the district court adequately considered the competing concerns just outlined. We think that a proper balancing of these concerns should lead a district court to consider several factors, including

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country, see also *Berg*, 61 F.3d at 105 (noting that insolvency of one party may play role in determining relative hardships); and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment. For example, in the instant case the controversy surrounding the enforceability of arbitrato irrituale may tend to favor adjournment because an Italian judgment confirming the award could itself be recognized and enforced in the district court. See, e.g., *Ackermann v. Levine*, 788 F.2d 830, 837, 841–842 & n. 12 (2d Cir.1986) (discussing recognition and enforcement of foreign judgments); N.Y. C.P.L.R. § 5301 et seq. (New York version of Uniform Foreign Judgments Recognition Act).

While this is not an exhaustive list, we think it adequately represents the various concerns that come into play when a district court is asked to adjourn enforcement proceedings to await the outcome of parallel foreign proceedings. Because the primary goal of the Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factors on the list should weigh more heavily in the district court's determination. In the instant case, however, we think the district court should reconsider its decision not to adjourn enforcement of the arbitral award in light of the foregoing considerations. Of course, by so doing, we do not intend in any way to influence the district court's decision.

## CONCLUSION

We have considered Maiellano's remaining arguments and find them to be without merit. For the foregoing reasons, we vacate and remand to the district court to reconsider its decision not to adjourn the enforcement proceedings pending the outcome of the Italian appeal.